## Holtz Will.

Argued January 11, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Huette F. Dowling,* with him *Paul H. Rhoads, Allen W. Holman, Jr.,* and *Rhoads, Sinon & Reader,* and *Dowling and Dowling,* for appellant.

*Ronald M. Katzman,* with him *James W. Evans,* and *Goldberg, Evans & Katzman,* for appellee.

OPINION BY MR. JUSTICE JONES, September 27, 1966:
Emma Holtz, an 83 year old spinster and Perry County resident, died March 4, 1962. Subsequently,

a will bearing date of December 18, 1947 and two codicils, bearing dates, respectively, of July 24 and August 14, 1958, were probated by the Register of Wills of Perry County and letters testamentary issued to one Hulda Stine. Thereafter, two appeals, each claiming that the will and codicils were forged, were taken from the probate of the three instruments.[1]

President Judge HIMES, specially presiding in the Orphans' Court of Perry County, directed that a jury be impanelled to determine whether the instruments were genuine or forged. After a lengthy trial, the jury returned a verdict finding that the instruments were forged. After oral arguments of counsel and the submission of written briefs, President Judge HIMES set aside the jury's verdict and found that the instruments were genuine and not forged. A court en banc—consisting of three judges designated by this Court[2]—dismissed the Board's exceptions to President Judge HIMES' decree nisi and entered a final decree which

---

[1] One Paul Balthouser, claiming to be Emma Holtz' sole heir at law who would take in the event of an intestacy, filed one appeal; the will proponents filed preliminary objections on the ground that Balthouser lacked standing to take the appeal; the court recognized that Balthouser had standing and dismissed the preliminary objections. The Board of World Missions of the Lutheran Church in America (the Board)—the present appellant who was named as a beneficiary under a prior will of Emma Holtz—filed the second appeal alleging that the will and codicils had been examined by handwriting experts who advised that the instruments were not genuine because: (1) the instruments had been typed long after the dates set forth therein; (2) the paper upon which the December 18, 1947 will was written, the ink in the purported signatures and the typewriter used in typing the will were not manufactured until after 1947; (3) the will and codicils, although dated on three separate dates, were drawn at the same time; (4) the typewriter which typed the codicils was not available at the dates the codicils were dated; (5) the signatures on the will and codicils were not Emma Holtz' signatures.

[2] President Judges HIMES, SHEELY and CHERRY.

affirmed the probate of the will and codicils. From that decree the instant appeal was taken.

At the outset, it is necessary to inquire into the scope of review which we entertain in determining the validity of this decree and such inquiry entails an evaluation of the effect of the jury verdict and the weight, if any, to be ascribed to such verdict.

The practice and procedure in the case at bar is governed by the Act of July 14, 1961, P. L. 610, §1, 20 P.S. §2080.745. Prior to the passage of that statute, an Orphans' Court had the power to dispose of an appeal from the probate of a testamentary instrument in the following manner: (a) if the dispute of fact concerning the validity of the writing alleged to be testamentary was *substantial,* then the court was under a *statutorily-mandated* duty to award the parties a trial by jury and (b) if the dispute of fact was *not substantial,* then the court could refuse a jury trial and either (1) sustain or (2) declare invalid the testamentary writing. See: *Murray Will,* 404 Pa. 120, 124-129, 171 A. 2d 171; *Hunter Will,* 416 Pa. 127, 136, 137, 205 A. 2d 97. Under such prior law when a party was *statutorily* entitled to a trial by jury or when the Orphans' Court, *in its discretion,* awarded a jury trial, then the statute provided that "the verdict of the jury shall be conclusive only if the court is satisfied with the justness of it on the basis of all the evidence. If the court is not so satisfied, it may set aside the verdict, grant a new trial, or enter such other judgment as satisfies its conscience." See: Act of August 10, 1951, P. L. 1163, as amended by the Act of February 10, 1956, P. L. (1955) 1022, §§745(a), 745(d).

However, the Act of 1961, supra, has changed the law in this respect. The statute now provides that: "(c) Will Contest and Other Matters. When a contest shall arise concerning the validity of a writing alleged to be testamentary . . ., the court, in its dis-

cretion at any stage of the proceedings, may impanel a jury to decide any question of fact *but the verdict of the jury shall be advisory only.*": Act of July 14, 1961, P. L. 610, §1, 20 P.S. §2080.745(c). (Emphasis added). As a result of this change in the statute there is now no *statutorily-mandated* right to a trial by jury in a will contest; the impanelling of a jury lies solely within the discretion of the chancellor. Moreover, since a jury verdict is now advisory only, the refusal of the chancellor to impanel a jury does not constitute an abuse of discretion: *Hunter Will,* supra, at p. 137. See also: *Abrams Will,* 419 Pa. 92, 96, 97, 213 A. 2d 638.

By reason of the advisory status now accorded by the legislature to a jury verdict in a will contest, a chancellor is now free to accept or reject, in whole or in part, the verdict of a jury. (Cf: *Dettra Will,* 415 Pa. 197, 202 A. 2d 827). In the case at bar, the chancellor, in rejecting the verdict of the jury that the will and codicils were forged, was acting within his statutory power, i.e., acting in the capacity of the ultimate fact-finding tribunal.[3]

Such wide power as the legislature has seen fit to invest in the chancellor, however, is subject to some limitations. It has long been well established that the findings of a chancellor, approved by a court en banc, are ordinarily controlling upon an appellate court. Nevertheless, the reviewing appellate court may reverse a decree based upon such findings if it appears that the chancellor abused his discretion, if the findings lack record-evidentiary support or if the findings are predicated upon a capricious disbelief of the evidence: *Dettra Will,* 415 Pa. 197, 201, 202 A. 2d 827; *Lanning Will,* 414 Pa. 313, 316, 200 A. 2d 392. Even though the

---

[3] Cf. the language of Mr. Justice (later Chief Justice) Stern in *DeLaurentiis's Estate,* 323 Pa. 70, 78, 79, 186 A. 359 defining the function of an Orphans' Court judge under the prior procedure. See also: *Lare Will,* 352 Pa. 323, 42 A. 2d 801.

power of the chancellor has been enhanced by legislative fiat, nevertheless the evaluation of the chancellor's findings is still subject to the rule long followed by this Court.

The appellant Board, giving full recognition to the advisory nature of a jury verdict, urges, however, that where the basic issue for determination rests upon the credibility of witnesses the jury verdict must be accorded "great weight".[4] Specifically, the Board submits that "an easily applied rule which this Court might set forth for the guidance of future jury trials in will contest matters would be that in making his independent review of the evidence to determine whether or not the jury verdict should be allowed to stand, the hearing judge should be bound by the jury's findings as to the credibility of the witnesses. If, after accepting the jury's findings as to credibility, the Court in reviewing the matter, then decides the verdict cannot reasonably be supported by the evidence, the chancellor would be proper in overturning the verdict. But the verdict should not be overturned where, using the jury's findings on credibility, the verdict can reasonably be supported by the evidence."[5] To adopt this Board-suggested rule would require this Court to rewrite the clear language of the statute; that we cannot do.

In an effort to ascertain whether the court below abused its discretion or capriciously disbelieved evidence and, particularly, whether the findings are supported by evidence of record, we have very carefully

---

[4] It must be noted that *Masciantonio Will*, 396 Pa. 16, 151 A. 2d 99, *Kerr v. O'Donovan*, 389 Pa. 614, 633, 134 A. 2d 213, *Aaron v. Strausser*, 360 Pa. 82, 59 A. 2d 910, *Lare Will*, 352 Pa. 323, 330, 42 A. 2d 801 and *DeLaurentiis's Estate*, 323 Pa. 70, 186 A. 359, all cited by the Board in support of its proposition, were decided prior to the statutory change in the law.

[5] Appellant Board's brief, p. 63.

examined and scrutinized the instant record consisting of over 1000 printed pages. Had we been acting in the court below we might have reached a different conclusion than did the court below: however, such is not a factor to be employed in evaluating the merits of this appeal. The chancellor, who personally observed and heard the witnesses, concluded that the will and codicils were genuine and such conclusion was arrived at from his evidentiary findings.[6]

A review of the evidence produced on both sides or a recital of the testimony of the various witnesses can serve no useful purpose. The principal testimony produced by the will and codicils proponents was that of the subscribing witnesses to all three instruments—the lawyer-scrivener and his secretary—who related the circumstances leading up to the preparation of the instruments and their execution and these witnesses testified that Emma Holtz executed all three instruments in their presence. The appellant Board relied principally upon the testimony of two handwriting experts who stated that the instruments, in their opinion, were forged and not genuine.

Of particular significance was certain evidence produced by the appellant Board *which eventually was not disputed by the proponents* of the will and codicils: (a) that the December 18, 1947 will had been typed upon a typewriter which was not manufactured until 1957, ten years later; (b) that the codicils of July 24 and August 14, 1958, had been typed on a typewriter which was not owned by, or available to, the lawyer-scrivener until 1959; (c) that the paper upon which the December 18, 1947 will had been typed was not manufactured until July, 1956; (d) that the December

---

[6] While the chancellor made no findings *specifically so designated*, the opinion of the chancellor renders clear just what his findings were.

18, 1947 will was signed with ink which was not manufactured until 1955; (5) that the will and codicils— dated, respectively, December 18, 1947, July 24, 1958 and August 14, 1958—were all executed and signed on the same day. In regard to this evidence, the chancellor accepted the explanation offered by the will proponents, viz., that Miss Holtz actually made the will in 1957 but insisted that it be back-dated to 1947 to avoid any possible attack on her competency and that, while the codicils were made on the dates indicated thereon, Miss Holtz later wanted to make changes but insisted that the instruments be back-dated.

It is evident that the chancellor chose to believe the testimony of the subscribing witnesses as to the authenticity of these three instruments and he placed upon their testimony the imprimatur of truthfulness. Whether we would have done so under the circumstances is of no moment. We recently said in *Mamallis v. Milbourne Borough,* 401 Pa. 375, 380, 164 A. 2d 209: "It is not for this Court, by studying isolated, cold words of a printed record, to believe certain witnesses and disbelieve others. *The matter of credibility is for the trial court.* The discretion possessed by that court . . . is particularly broad because his is the best opportunity to observe the demeanor of the witness called before him." (Emphasis added). See also: *Girsh Trust,* 410 Pa. 455, 471, 189 A. 2d 852. The resolution of the credibility of the witnesses is for the chancellor and, unless there is record proof of a capricious disbelief of evidence, we must accept the determination of credibility made by the chancellor. There is nothing upon this record which would indicate any capricious disbelief of evidence by the chancellor; therefore, under the circumstances, the credibility of the witnesses was for the chancellor and we are bound by his determination thereof.

548

Lastly, our review of this record reveals no abuse of discretion on the part of the court below and that the findings, from which the court below drew its ultimate conclusion of the genuineness of the will and codicils, are supported by evidence. Under such circumstances, we are bound to uphold this decree.

Decree affirmed. Estate to pay costs.

Mr. Justice MUSMANNO dissents.