359 A.2d 773

In re ESTATE of Frank Raymond SLIGHT, an Incompetent.

**Appeal of UNION NATIONAL BANK & TRUST OF SOUDERTON, Guardian.**

Supreme Court of Pennsylvania.

Argued July 1, 1975.

Decided July 6, 1976.

620

Edward J. Hardiman, Lansdale, for appellant.

Elmer L. Menges, Ambler, for Ruth D. Slight.

Robert G. Rosen, Lansdale, for intervenors, Laura S. Williams and Anita E. Glazier.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

On April 19, 1974, Frank R. Slight was declared incompetent[1] by the orphans' court division of the court below, and the Union National Bank & Trust Company of Souderton was appointed guardian of his estate.[2] Several months later the incompetent's wife, Ruth D. Slight, petitioned the court to authorize and direct the guardian to pay to her, as support and maintenance, the sum of $100 per week from her husband's estate.[3] After a hearing, the trial court granted the requested relief.[4] Exceptions to the decree *nisi* were overruled and a final

1. Mr. Slight had been placed in a convalescent home on February 21, 1974. His condition was diagnosed as senility induced by cerebroarteriosclerosis.

2. See Decedents, Estates and Fiduciaries Act, 20 Pa.C.S.A. § 5511.

3. The court's authority to direct such payments is to be found in 20 Pa.C.S.A. § 5536.

4. The trial court's decree speaks in terms of "$5,000 a year . . . or approximately $100 a week." In addition, the court ordered reimbursement of Mrs. Slight's expenditures for utility bills, physical maintenance of the family home and Pennsylvania income tax for the previous year. The payment of these amounts from the estate is not challenged here.

decree entered. The guardian has appealed.[5] We will reverse.

The guardian first contends that payments from its ward's estate to appellee are prohibited by the terms of an antenuptial agreement between the Slights. Paragraph 4 of the agreement provides:

> "*Declaration of Agreement.* This indenture witnesseth that each of them, the husband and wife, hereby declares it to be his and her intention and desire that during their marriage each of them shall be and continue completely independent of the other as regards the enjoyment and disposal of all property, whether owned by either of them at the commencement of the marriage or coming to them or either of them during the marriage. Each of them hereby agrees with the other, in view and consideration of the proposed marriage, that so far as is legally possible, by their private act, declaration, and agreement, all property belonging to either of them at the commencement of the marriage or coming to either of them during the marriage shall be and is enjoyed by him or her, and be subject to the dispositions of him or her as his or her separate property, and after the death of either it shall be free from any claim by the other on account of any statutory right, in the same manner as if the proposed marriage had never been celebrated."

Arguing that the clear intention of these words was to maintain each party's respective property interests entirely separate and distinct both throughout coverture and after the death of either spouse, appellant insists that the lower court's decree was tantamount to a determination of the invalidity of the agreement. To reach that result without requiring clear and convincing evi-

5. Section 202(3) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, 17 P.S. § 211.202(3) (Supp. 1975–1976).

dence of such invalidity from appellee, appellant claims, was a clear error of law requiring reversal.

It is true, of course, that a party challenging the validity of an antenuptial agreement shoulders the described burden of proof, see *Hillegass Estate*, 431 Pa. 144, 244 A.2d 672 (1968); *Gelb Estate*, 425 Pa. 117, 228 A.2d 367 (1967), but Mrs. Slight raises no challenge whatever to the agreement. She contends, instead, that it simply is not applicable to a claim for support from her incompetent husband's estate. The hearing judge agreed and ruled that the agreement was designed to control the postmortem rights of the parties and could not be read to relieve the husband of his obligation to support his spouse throughout their marriage.

Although they may cover various aspects of the marital relationship, antenuptial agreements usually are "instruments designed and executed for a particular purpose—to alter or extinguish a spouse's statutory rights of inheritance." *Harrison Estate*, 456 Pa. 356, 359, 319 A.2d 5, 7 (1974). Because the surviving spouse in Pennsylvania is statutorily invested with substantial rights in the estate of the deceased spouse, close scrutiny is given to any agreement which purports to contract away those rights. See, *e. g., Harrison Estate, supra*; *Rosciolo Estate*, 434 Pa. 461, 258 A.2d 623 (1969); *Hillegass Estate, supra*; *Vallish Estate*, 431 Pa. 88, 244 A.2d 745 (1968). This characteristic post-mortem purpose of such agreements is clearly evidenced by the quoted language of Paragraph 4 of the agreement here. Of course, there is nothing to prevent a contractual agreement between a prospective husband and wife from speaking also or alternatively to financial affairs during coverture, including a disavowal of the husband's duty of support.[6] In the case at bar, however, the trial court

6. Traditionally any such attempt to absolve a husband of his support obligation has been viewed askance by the courts. The obligation has been regarded as "paramount", one "imposed by law

found that the agreement was not motivated by an intent to relieve Mr. Slight of his support obligation, and that the agreement should not be read as if there were such an intent. During their marriage and until the time Mr. Slight was placed in a convalescent home he paid all of their mutual expenses and, in addition, his wife's expenses except for clothing, prescriptions and doctor visits. He sought no contribution from her separate funds in meeting these expenses. What Mrs. Slight now seeks is a continuation of that arrangement, with the estate meeting the expenses just as her husband did before his incompetency. We agree with the court below that the antenuptial agreement, which makes no specific provision for incompetency, does not prevent this.

■ Appellant next argues that, the antenuptial agreement aside, the lower court erred in directing support payments because Mrs. Slight failed in her statutory duty of proving her need for the requested funds by sufficient, competent evidence. Section 5536 of the Decedents, Estates and Fiduciaries Act, 20 Pa.C.S.A. § 5536 to which Mrs. Slight points in advancing her claim, provides in pertinent part:

> "The court, *for cause shown,* may authorize or direct *the payment* or application *of any or all of the income or principal of the estate of the incompetent for* the *care, maintenance* or education *of* the incompetent, *his spouse, . . . ."* (emphasis supplied).

The question is thus whether Mrs. Slight has in fact shown cause. We agree with appellant that she did not.

At the time of the hearing, the estate of the incompetent in the hands of the guardian was valued at approxi-

as an incident of the marital status and the legal unity of the husband and wife." *Commonwealth ex rel. Roviello v. Roviello,* 229 Pa.Super. 428, 435, 323 A.2d 766, 770–771 (1974). See *Walbert v. Farina,* 411 Pa. 400, 404, 192 A.2d 404, 406 (1963); *White v. White,* 226 Pa.Super. 499, 501, 313 A.2d 776, 778 (1973); *Commonwealth ex rel. Krouse v. Krouse,* 221 Pa.Super. 13, 289 A.2d 233 (1972).

mately $76,000. Although this sum was producing an annual income of about $6,200., Mr. Slight's expenses were approximately $10,000. Thus principal was being invaded at the rate of about $3,800 per year. Mrs. Slight's estate was not fully valued in the evidence adduced at the hearing. It was established, however, that her spendable cash receipts were about $500 per month.[7] Since the onset of her husband's incompetency, Mrs. Slight has received no financial assistance from him or his guardian, and is therefore paying some expenses formerly paid by her husband. It was to cover these expenditures that Mrs. Slight made the request for $100 per week, notwithstanding that, according to her own testimony, her income was sufficient to meet all her personal needs and the additional expenses she has been defraying. The hearing judge found that this request "does not seem out of line," and accordingly directed the appellant guardian to pay Mrs. Slight $5,000 per year "out of income, or of principal, as required."

It is clear that the payments directed to be made to Mrs. Slight must come out of the principal of her husband's estate, thus increasing the annual invasion of principal to $8,800 per year. At this rate of consumption, Mr. Slight's estate will be non-existent in less than nine years.[8] Mrs. Slight was 82 years of age at the time of the hearing, and it is to be assumed that Mr. Slight is also elderly. There is no evidence in the record as to the life expectancy of either party, but it cannot be assumed

7. The receipts are derived from Social Security benefits ($115), interest on savings of $20,000 ($100 approximately) and amortization payments on a mortgage which Mrs. Slight owns ($283) (the latter payments being on account of both principal and interest). There is no record evidence to support the trial court's impression, as stated in his opinion, "that she is practically without funds."

8. On a straight line basis the fund would be consumed in about nine years. The repeated incursions into principal, however, necessarily reduce income, so that the rate of consumption of principal constantly accelerates.

that Mr. Slight will not live beyond the period it will take to exhaust his estate. As long as one spouse has assets and spendable cash of his or her own, we see no justification for reducing the other, incompetent spouse to the status of a pauper merely in order that the obligation to support may be fulfilled. This, like other obligations, is relative, and requires a balancing of interests.

A similar case to the one before us was decided recently by the Court of Common Pleas of Delaware County. *In re Robert A. Boyle,* 64 Pa.D. & C.2d 472 (C.P.Del.Co. 1973). In that case the incompetent husband's estate produced income in excess of his expenses in the amount of $2,000 annually which was being paid to the wife for her support and maintenance. The wife's separate estate provided her with a yearly income of $30,000. Nevertheless, the wife petitioned, under 5536 of the Decedents Estates and Fiduciaries Act, to increase the payments from her husband's estate to more than $8,000 yearly. The increased amount would necessarily have come from principal, and would have served only to augment the wife's already adequate funds at the cost of assuring the incompetent's inability to meet his own expenses from income. The court denied the petition.[9]

While the wife in *Boyle* was considerably more affluent than is Mrs. Slight, the conclusion reached by the court there is applicable here: " . . . under the circumstances, the continued support maintenance of the wife in the same fashion as previously is a burden which cannot be imposed on the incompetent's estate." 64 Pa. D. & C.2d at 476.

In sum, given the assets presently available to Mrs. Slight [10] and the potentially drastic effect on her hus-

---

**9.** The court in *Boyle* also ruled, as we have done earlier in this opinion, that an antenuptial agreement between the parties did not prevent the award of support payments from the husband's estate.

**10.** The monthly payment on the mortgage held by Mrs. Slight is $283.11. The final payment is due in April of 1977. At that

band's estate which is to be anticipated by the support payments ordered by the court, we conclude that, under § 5536 of the Decedents Estates and Fiduciaries Act, cause was not shown, and that it was an abuse of discretion to grant the petition for support.

Decree reversed. Costs on the estate.

ROBERTS, J., filed a dissenting opinion in which NIX and MANDERINO, JJ., join.

ROBERTS, Justice (dissenting).

"[I]n reviewing the decision of the orphans' court, our task is to assure that the record is free from legal error and to determine if the chancellor's findings are supported by competent and adequate evidence, and are not predicated upon capricious disbelief of competent and credible evidence." *Cohen Will*, 445 Pa. 549, 550, 284 A. 2d 754, 755 (1971); *Holtz Will*, 422 Pa. 540, 544, 222 A. 2d 885, 888 (1966); *Hunter Will*, 416 Pa. 127, 136, 205 A.2d 97, 103 (1964). The findings here are supported in the record and the conclusion of the chancellor should not be disturbed. The majority does not give adequate weight to the determination of the orphans' court; it simply substitutes its judgment for that of the court that heard the evidence.

I dissent and would affirm the decree of President Judge Taxis awarding the 82 year old appellee $100 per week for her support.

NIX and MANDERINO, JJ., join in this dissenting opinion.

time, she would be free to file another petition for support and maintenance from her husband's estate under the changed circumstances of her reduction in income and concomitant increase in need.