491 A.2d 132

**COMMONWEALTH of Pennsylvania**

v.

**Richard Allen SPOTTS, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted February 24, 1984.

Filed March 29, 1985.

32

Marilyn C. Zilli, Assistant Public Defender, Harrisburg, for appellant.

Katherene E. Holtzinger, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before SPAETH, President Judge, and CIRILLO and CERCONE, JJ.

SPAETH, President Judge:

█ This is an appeal from judgment of sentence for criminal attempt (escape) and possession of implements of escape. Appellant's principal argument is that his trial counsel was ineffective. Appellant gave two inculpatory statements. Since it is undisputed that the first statement was obtained without informing appellant of his *Miranda* rights,[1] it is apparent that had trial counsel filed a motion to suppress the first statement, the motion would have had to have been granted. Appellant argues that had trial counsel filed a motion to suppress his second statement, that motion too would have had to have been granted because the second statement was tainted by the illegally obtained first statement. Since this argument has arguable merit, we remand for a hearing on whether trial counsel had any reasonable basis for not filing any motion to suppress.

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On July 26, 1981, appellant, an inmate at the Dauphin County prison, was interrogated by John Hrabovsky, who was employed at the prison as an investigator, in connection with an attempted escape from the prison. Appellant, who was without counsel and was not informed of his *Miranda* rights, implicated himself by stating that when his girlfriend, Carolyn Duke, had visited him at the prison the day before, she brought him a wristband containing hacksaw blades; he also stated that his girlfriend did not know the contents of the wristband. N.T. 90.

After learning of appellant's statement, Kenneth Barbush, a criminal investigator for the Dauphin County district attorney's office, conducted an investigation, and on July 29, 1984, Mr. Barbush, with Mr. Hrabovsky present, interrogated appellant. N.T. 62. After informing appellant of his *Miranda* rights, Mr. Barbush told appellant that he was investigating Ms. Duke's role in the attempted escape, and that she might be prosecuted. N.T. 62–63. Appellant then reiterated his statement of July 26th, that Ms. Duke had brought him the wristband but did not know that it contained hacksaw blades. N.T. 63.

Trial counsel made no motion to suppress appellant's statement, and appellate counsel now argues that because of this failure, trial counsel was ineffective. To evaluate this argument we must determine whether the motion to suppress would have had arguable merit. If the motion would have had arguable merit, then we must remand for a hearing on whether counsel's decision not to file the motion had any reasonable basis designed to effectuate appellant's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

Appellant argues that had a motion to suppress been filed, the first statement would have been suppressed because "[i]t is clear [from the testimony of Mr. Hrabovsky himself] that appellant was questioned ... without first being given his *Miranda* warnings." Brief for Appellant at 15. And next, appellant argues that had a motion to

suppress been filed, the second statement would also have been suppressed, for either of two reasons: because it was rendered involuntary by the circumstances under which it was given, *i.e.*, while appellant was in prison, and accompanied by the threat to prosecute his girlfriend, *id.* at 16–17; and because "although preceded by *Miranda* warnings [it] was never-the-less [*sic*] inadmissible as the product of the exploitation of the prior illegal statement", *id.* at 17–19.

■ The principles underlying appellant's argument are long-settled. Where an accused, like appellant, makes two inculpatory statements, the first without, and the second with, *Miranda* warnings, the Commonwealth must establish that the second statement was not the exploitation of the first. This means that the Commonwealth must establish that the second statement was obtained in circumstances sufficiently distinguishable from the circumstances in which the first statement was obtained to purge it of the first statement's taint. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Chacko,* 500 Pa. 571, 459 A.2d 311 (1983); *Commonwealth v. Marabel,* 445 Pa. 435, 283 A.2d 285 (1971); *Commonwealth v. Banks,* 429 Pa. 53, 239 A.2d 416 (1968). To determine whether the second statement was purged of the first statement's taint, all of the circumstances in which the two statements were made must be examined. If that examination discloses that the Commonwealth has not sustained its burden of establishing that there was no taint, the second statement, as well as the first, must be suppressed. *Commonwealth v. Marabel, supra, Commonwealth v. Bordner,* 432 Pa. 405, 247 A.2d 612 (1968).

*Commonwealth v. Marabel, supra,* is illustrative of the examination that a court must make in determining whether the Commonwealth has established that a second statement was not tainted by an illegally obtained first statement. There the Supreme Court found that the Commonwealth had established no taint. The case is especially striking when compared with the present case. In almost every respect, the evidence that enabled the Commonwealth to

sustain its burden in *Marabel* was contradicted by the evidence here. Thus: In *Marabel* the accused said nothing inculpatory in the first statement, *Commonwealth v. Marabel, supra,* 445 Pa. at 445, 283 A.2d at 290; here, appellant admitted in his first statement that his girlfriend had given him the hacksaw blades used in the attempted escape. In *Marabel* the accused was not in custody between interrogations, *id.,* 445 Pa. at 446, 283 A.2d at 290; here, appellant was in prison. In *Marabel* the accused made no inculpatory statement until after being informed of his *Miranda* rights, *id.,* 445 Pa. at 446–447, 283 A.2d at 290–291; here, as Mr. Hrabovsky himself testified, appellant made his first, inculpatory, statement without having been informed of his *Miranda* rights. In *Marabel* two persons had given statements that incriminated the accused, and it was the confrontation with these two statements that caused the accused to confess, not the first, tainted, statement. Here, although another prisoner had given a statement implicating appellant, the evidence suggests that it was the fact that appellant had "let the cat out of the bag" in his first statement, in combination with the threat to prosecute appellant's girlfriend, that led to the second statement.

In short, while in *Marabel* the evidence showed that the accused had made the second statement freely and without any compulsion deriving from the first statement, here the evidence tends to show precisely the opposite. As the United States Supreme Court has stated in *United States v. Bayer,* 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947):

> [A]fter an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first.

*Id.* at 540, 67 S.Ct. at 1398.

*Accord: Commonwealth v. Ware,* 438 Pa. 517, 265 A.2d 790 (1970) (recital of *Miranda* warnings near end of interro-

gation, after oral confession obtained, did not purge taint of illegal interrogation). *See also* Annot. 80 A.L.R.2d 1428 (1960) (collecting cases deciding whether threats to prosecute relative rendered statement involuntary).

Given the record before us, we are hard put to imagine why appellant's trial counsel failed to file a motion to suppress appellant's statements—the first as illegally obtained, and the second as the exploitation, or fruit, of the first. Arguably, we should simply find counsel ineffective now, and vacate the judgment of sentence and order a new trial. However, counsel may have had some reasonable basis for his failure, and the better course, we have concluded, is to remand for an ineffectiveness hearing.

–2–

Appellant also argues that if this case is not remanded for an ineffectiveness hearing, then the judgment should be vacated and a new trial ordered because of trial errors. One of the errors assigned is that the trial court erred in permitting the Commonwealth to use the illegally obtained first statement to impeach appellant.

It is apparent that the trial court was led into its assumption that appellant's second statement was admissible, and from that assumption into permitting use of the first statement, because appellant's trial counsel had filed no motion to suppress the statements. As already stated, we must remand this case for a hearing on why trial counsel filed no motion to suppress. It seems at least possible, if not likely, that the hearing will result, first, in trial counsel being found ineffective, and second, in new counsel's motion to suppress both statements being granted, and a new trial being ordered. In these circumstances, we do not reach appellant's argument that at the trial that has been held the trial court erred in permitting him to be impeached by his prior statement.[2]

2. Neither do we reach appellant's other arguments, except his argument that the evidence was insufficient. As to that, even without considering appellant's statements, the evidence was sufficient to prove an attempt by appellant to escape from the prison.

Remanded for a hearing on whether trial counsel was ineffective in failing to file a motion to suppress appellant's statements. Jurisdiction relinquished.

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting:

I respectfully dissent.

Appellant alleges that the first interrogation and the second interrogation were tainted by the fact of his continued incarceration, citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The first statement was obtained as a result of the questioning of a prison investigator at the time of the incident. The second interrogation was pursuant to an investigation by the Dauphin County District Attorney's office three days later.

The fact that appellant was incarcerated from the time of the first incident to that of the second does not support a finding of a nexus of illegality due to the fact that appellant was incarcerated for a prior burglary.

The circumstances of *Wong Sun* are distinguishable from this case. The appellant in *Wong Sun*, Blackie Toy, had given statements to the officers in the bedroom of his own home where he, his wife, and child were sleeping. The statements were found to be the "tangible fruits of the unwarranted intrusion."

The officers in *Wong Sun* had not obtained a warrant. The information from which they obtained their probable cause came from an unknown informant who had provided sparse and imprecise information. Thus, unlike the case at bar, the court found that there was an unwarranted intrusion by the officers.

In the instant case, the appellant was interrogated in the prison. He was there as a result of a prior burglary. Thus, he cannot be allowed to use the fact of his prior incarceration to shield him from questioning on the basis of involuntary confinement. There is no illegal arrest in this

case from which we can find the tainted nexus, to which appellant refers. This is not a case of an illegal arrest and subsequent confession.

Appellant's second claim of ineffectiveness stems from counsel's allowance of appellant to testify on his own behalf. He testified that he did not make a particular inculpatory statement, thus "opening the door" for impeachment. His third claim is that the court erred in allowing the admission of these statements for impeachment purposes. The inculpatory statements in question are that which was the subject of the first claim of ineffectiveness, viz., he stated "he had a problem."

The appellant decided to take the stand in his own behalf. He testified that he was not involved in the crime and denied making the statement which is the subject of the claim. Even if it were the case that the court had found that the statements made on July 26, and later on July 29 were both inadmissible, the appellant could not be heard to complain of counsel's ineffectiveness in this instance.

For years it generally was the law in the Commonwealth that constitutionally infirm statements which a Suppression Court declares inadmissible cannot be used to impeach a defendant who elects to testify at trial on his own behalf. *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975). However, here the appellant himself chose not only to testify but also to reiterate the factual narrative contained in the statement which was suppressed and claimed by him to be invalid. These circumstances make the instant case directly controlled by *Commonwealth v. Mobley*, 267 Pa.Super. 29, 405 A.2d 1287 (1979). There, after choosing to testify to the existence and substance of a suppressed statement, the defendant was impeached with said statement. As in *Mobley*, the appellant chose to "open the door" by disclosing the existence and substance of the suppressed statement and cannot complain now of its use. *Mobley, supra*, 267 Pa.Superior Ct. at p. 32, 405 A.2d at p. 1287.

*Commonwealth v. Anderson,* 302 Pa.Super. 457, 448 A.2d
1131 (1982).

Moreover, the principle of this holding further supports
the finding that the admission of the statements made on
both July 26 and July 29 was not error by the trial court.

> In addition, because of the similarity between the appel-
> lant's testimony and the suppressed statement, the admis-
> sion of the statement, if error at all, is error that is
> harmless. *Commonwealth v. Story,* 476 Pa. 391, 383
> A.2d 155 (1978), *Commonwealth v. Cummings,* 466 Pa.
> 332, 353 A.2d 381 (1976).

*Commonwealth v. Anderson, supra,* 302 Pa.Superior Ct. at
463, 448 A.2d at 1134.

Thus, even if the statements had been suppressed, the
claims raised by appellant with reference to these inculpato-
ry statements are rendered moot by virtue of his testimony
in which he denied them by reiterating them. *Common-
wealth v. Anderson, supra.*

Appellant's fourth claim is of ineffective assistance of
counsel in not objecting to the court's failure to charge the
jury to disregard the alleged inculpatory statements. Ap-
pellant also attributes error to the court for failing to
charge the jury to disregard these same statements, if they
determined the statements were involuntarily given.

The statements in question are the same two statements
addressed in the previous claims. The first statement
which is alleged that appellant gave on July 26, 1981 was to
John Harbovsky. The statement gives rise to the allegation
of ineffectiveness. This claim contradicts the position
which trial counsel took in his defense of appellant. The
notes of testimony indicate that appellant, on cross-exami-
nation by the District Attorney, denied having made any
such statements. If counsel would have requested a charge
regarding the voluntariness of the statements, such a re-
quest would have been inconsistent with his contention that
appellant did not make the statement. The defense at trial
was that appellant was not guilty and that he never made
the inculpatory statements. Counsel had a reasonable basis

for his not objecting consistent with his trial strategy. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

Appellant next asserts that the Commonwealth did not lay a proper foundation for their exhibits, numbers one, two and three, before they were admitted into evidence.

Commonwealth's exhibits were respectively the hacksaw blade found under the bunk in cell A-1-13 of the Dauphin County Prison, the blade found outside the window of cell A-1-14, and the leather wristband with the inscription "Rick" on it. Appellant's argument is that the Commonwealth failed to establish a chain, even a tenuous one, which would connect the physical evidence to the appellant.

The argument raised by appellant fails because there is no need to have positive testimony which links the evidence to the crime before it is admitted into evidence. A lack of testimony as to the link between the weapon and the crime affects the weight of the evidence, not its admissibility. *Commonwealth v. Manns*, 229 Pa.Super. 21, 323 A.2d 262 (1974). The Supreme Court of Pennsylvania has stated that even where the evidence in question cannot be identified by positive testimony as the actual murder weapon, it can be introduced into evidence. The fact of the lack of positive identification affects the weight, not the admissibility of the evidence. *Commonwealth v. Ford*, 451 Pa. 81, 301 A.2d 856 (1973); *see also Commonwealth v. Simpson*, 316 Pa. Super. 115, 462 A.2d 821 (1983), where the court held that the fact that there was no positive identification of the jogging pants affected the weight not the admissibility of the relevant evidence.

Since the absence of positive identification of the weapon doesn't affect its admissibility, appellant cannot argue that the absence of positive testimony linking the appellant to the items which comprise the contents of the exhibits in question renders them inadmissible.

There was testimony that appellant was seen in possession of the exhibits in question. Each piece of evidence

need not be linked to the appellant beyond all doubt; that is a question for the fact finder. *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468 (1977); *see also Commonwealth v. Brown,* 320 Pa.Super. 80, 466 A.2d 1071 (1983).

The law is clear that physical evidence may be properly admitted despite gaps in testimony regarding its custody. *Commonwealth v. Royster,* 472 Pa. 581, 372 A.2d 1194 (1977); *Commonwealth v. Ford,* 451 Pa. 81, 301 A.2d 856 (1973). We have reasoned that gaps in the chain of custody go to the weight to be given to the testimony, not to its admissibility. Applying that reasoning to the instant situation, it is clear that the question being raised is also one of credibility, and not of admissibility.

*Commonwealth v. Bolden,* 486 Pa. 383, 406 A.2d 333 (1979). The evidence was therefore properly admitted.

Lastly, appellant contends that there was insufficient evidence to find him guilty beyond a reasonable doubt.

The Commonwealth, as verdict winner, is entitled to have the evidence viewed in the light most favorable to it. *Commonwealth v. Burton,* 450 Pa. 532, 301 A.2d 599 (1973). On appellate review, it is not the function of the court to weigh the evidence.

Traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution. *Commonwealth v. Hampton,* 462 Pa. 322, 341 A.2d 101 (1975); *Commonwealth v. Murray,* 460 Pa. 605, 334 A.2d 255 (1975); *Commonwealth v. Oates,* 448 Pa. 486, 295 A.2d 337 (1972); *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972). While there may be some legitimacy for a trial court, who has also observed the witnesses as they testified, to consider the weight of the evidence and to that extent review the jury's determination of credibility, there is surely no justification for an appellate court, relying solely upon a cold record, to exercise such a function.

*Commonwealth v. Farquharson,* 467 Pa. 50, 354 A.2d 545 (1976).

42

There was testimony that appellant was heard telling someone on the telephone to bring the blades. The appellant was in possession of two hacksaw blades on July 26, 1981. There was testimony that appellant had requested another inmate to participate in an escape. Appellant was also seen in a cell with a bar that had been sawed three-quarters of the way through.

I would not remand for a hearing on whether trial counsel was ineffective in failing to file a motion to suppress appellant's statements.