J-S03003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARIANO MARTINEZ | |
| Appellant | No. 520 EDA 2015 |

Appeal from the PCRA Order January 30, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010891-2007

BEFORE:  FORD ELLIOTT, P.J.E., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED JUNE 10, 2016**

Appellant Mariano Martinez appeals from the order entered in the Philadelphia County Court of Common Pleas, which dismissed his petition filed for relief pursuant to the Post Conviction Relief Act ("PCRA").[1]  After careful review, we remand this matter to the PCRA court for an evidentiary hearing on Appellant's ineffective assistance of counsel claim.

The relevant facts and procedural history of this appeal are as follows. On June 29, 2007, Dennis Michael Decker, Robert Campellone, and some other co-workers were eating lunch at a restaurant when Decker observed Campellone's stolen quad[2] drive past the restaurant.  N.T., 8/4/2008, at 96-

_____

[1] 42 Pa.C.S. §§ 9541-9546.

[2] A quad is a four-wheeled all-terrain vehicle.

97. Decker and his co-workers followed the quad in a truck until they encountered five or six men who were "mostly black and Hispanic" on the southern alleyway between Neilson and Ormond streets. *Id.* at 99-100. A "black gentleman" started shooting at Decker and his friends, and soon "more than one person" were shooting at them, including an individual whom Decker later identified as Appellant. *Id.* at 102, 108.

Detective Matthew Gillespie heard three or four gunshots from his patrol car. N.T., 8/5/2008, at 23-34. He drove toward the gunshots and observed a man with a blue shirt running away from him on Neilson Street about two minutes after he initially heard the gunshots. *Id.* at 37, 38. Detective Gillespie then spoke with a person at the VFW, got back in his car and began driving slowly up Neilson Street. *Id.* at 38. He observed Appellant, wearing a blue shirt, on Neilson Street. He said "Police, don't move," and Appellant said, "I didn't do nothing." *Id.* at 39. Appellant then "put his hands up and kept walking towards [him]." *Id.* Detective Gillespie arrested Appellant.

On August 7, 2008, a jury convicted Appellant of four counts of aggravated assault, four counts of recklessly endangering another person ("REAP"), one count of possession of an instrument of crime ("PIC"), and

one count of firearms not to be carried without a license.[3]   The jury acquitted Appellant of four counts of criminal attempt murder and one count of criminal conspiracy.

On October 2, 2008, the court sentenced Appellant to 20-40 years' incarceration and 12 years' consecutive probation.[4]   On November 3, 2008, Appellant filed a timely notice of appeal.[5]   This Court affirmed Appellant's judgment of sentence on February 22, 2010, and our Supreme Court denied his petition for allowance of appeal on August 12, 2010.   On April 4, 2011, Appellant filed a *pro se* PCRA petition, and the PCRA court appointed counsel.   On March 9, 2012, new PCRA counsel entered his appearance. Appellant filed an amended PCRA petition on August 17, 2012.   On July 21, 2014, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing.   On January 30, 2015, the PCRA court dismissed Appellant's petition.   On February 18, 2015, Appellant filed a

_____

[3] 18 Pa.C.S. §§ 2702(a)(1), 2705, 907(a), and 6106, respectively.

[4] The court imposed four consecutive sentences of 5-10 years' incarceration, one for each of his aggravated assault convictions.   The court consecutively imposed 7 years' probation for his firearms not be carried without a license count and 5 years' probation for his PIC conviction.   Appellant's REAP convictions merged for sentencing purposes.

[5] November 1, 2008 fell on a Saturday.   Thus, he timely filed his notice of appeal on Monday, November 3, 2008.   *See* 1 Pa.C.S. § 1908 (when computing the 30-day filing period, "[if] the last day of any such period shall fall on Saturday or Sunday… such day shall be omitted from the computation.").

timely notice of appeal.  Appellant and the trial court complied with Pa.R.A.P. 1925(b).[6]

Appellant raises the following issue for our review:

WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO CALL ALIBI WITNESSES WHO HE KNEW OF AND KNEW COULD PROVIDE A POWERFUL RESPONSE TO THE COMMONWEALTH'S SPECIOUS EYEWITNESS IDENTIFICATIONS?

Appellant's Brief at 2.

Appellant argues his trial counsel was ineffective for failing to call Appellant's wife and daughter as alibi witnesses, because trial counsel knew of the witnesses, knew that they were available and willing to testify, and their testimony was consistent with counsel's mistaken identity defense.  He claims counsel's error prejudiced him and requests a new trial, or a remand for an evidentiary hearing on counsel's ineffectiveness.  We agree that an evidentiary hearing is necessary.

Our standard of review is well-settled.  "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error."  **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa.2014) (internal quotation marks and citation omitted).  "The scope of review is limited to the findings of the PCRA court and the

---

[6] On February 26, 2015, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied on March 6, 2015.

evidence of record, viewed in the light most favorable to the prevailing party at the trial level." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa.2014) (citation omitted).

Both the Pennsylvania and the United States Constitutions provide the accused the right to the assistance of counsel:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. ***See also*** Pa. Const. art. I, § 9.

"[T]he right to counsel has been recognized as a fundamental right, one that is essential to the goal of ensuring that every criminal defendant receives a fair trial before an impartial tribunal." ***Commonwealth v. Chmiel***, 738 A.2d 406, 422 (Pa.1999), *cert. denied sub nom*. ***Pennsylvania v. Chmiel***, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000) (citing ***Gideon v. Wainwright***, 372 U.S. 335, 344–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963)). "Moreover, it is axiomatic that a criminal defendant is constitutionally entitled to the *effective* assistance of counsel." ***Id.*** (internal quotations and citations omitted) (emphasis in original). "Every citizen of this nation is entitled to the effective assistance of counsel, and [our Supreme Court] has been scrupulous in its efforts to assure effective representation to all criminal defendants who appear before the courts of

this Commonwealth." **Commonwealth v. Breaker**, 318 A.2d 354, 360 (Pa.1974).

Trial counsel is presumed to be effective, and the petitioner bears the burden to prove otherwise. **Commonwealth v. Steckley**, 128 A.3d 826, 831 (Pa.Super.2015). Further, "claims of ineffective assistance of counsel are to be deferred to PCRA review." **Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa.2013). To succeed on a claim of ineffective assistance of counsel, a PCRA petitioner must plead and prove each of the following three **Pierce**[7] factors by a preponderance of the evidence:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

**Steckley**, 128 A.3d at 831 (quoting **Commonwealth v. Reed,** 971 A.2d 1216, 1221 (Pa.2009)).

"If an appellant fails to prove by a preponderance of the evidence any of the **Pierce** prongs, the Court need not address the remaining prongs of the test." **Commonwealth v. Fitzgerald**, 979 A.2d 908, 911 (Pa.Super.2009), *appeal denied*, 990 A.2d 727 (Pa.2010) (citation omitted).

When a claim has arguable merit, and there has been no evidentiary hearing below to determine if there was a reasonable basis for counsel's

---

[7] **Commonwealth v. Pierce**, 527 A.2d 973 (Pa.1987).

actions, this Court will remand for an evidentiary hearing. ***Commonwealth v. Shablin***, 524 A.2d 511, 512 (Pa.Super.1987) (quoting ***Commonwealth v. Spotts***, 491 A.2d 132, 134 (Pa.Super.1985)).

However,

> the right to an evidentiary hearing on a post-conviction petition is not absolute. ***Commonwealth v. Jordan***, 772 A.2d 1011, 1014 (Pa.Super.2001). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. ***Id***. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. ***Commonwealth v. Hardcastle***, 701 A.2d 541, 542-543 ([Pa.]1997).

***Commonwealth v. Khalifah***, 852 A.2d 1238, 1239-40 (Pa.Super.2004).

Further,

> remand for an evidentiary hearing is not a discovery tool wherein counsel may conduct investigation and interrogation to search for support for vague or boilerplate allegations of ineffectiveness. Rather, appellant "must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective," before remand for an evidentiary hearing will be granted. ***Commonwealth v. Pettus***, 424 A.2d 1332, 1335 ([Pa.]1981). Moreover, if it is clear that: the allegation lacks arguable merit; an objectively reasonable basis designed to effectuate appellant's interests existed for counsel's actions or inactions; or appellant was not prejudiced by the alleged error by counsel, then an evidentiary hearing is unnecessary. ***Commonwealth v. Clemmons***, 479 A.2d 955, 957 ([Pa.]1984).

*Commonwealth v. Petras*, 534 A.2d 483, 485 (Pa.Super.1987).

The record reflects that before defense counsel gave his opening statement, Appellant requested a continuance to obtain new counsel, but that request was denied. *See* N.T., 8/01/2008 at 24-25. Appellant now claims counsel was ineffective for failing to call two witnesses, his wife and daughter, who would have testified that Appellant was with them during the time he allegedly committed the crimes, and that they watched him walk out of their apartment, heading toward work, when he was immediately arrested. Appellant's wife would have further testified that she asked the police officer why he was arresting her husband, who had just departed from their home.

To obtain relief for ineffective assistance of counsel on a missing witness claim, the appellant is required to establish that (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for appellant at trial; and (5) the absence of the testimony prejudiced appellant so as to deny him a fair trial. *Commonwealth v. Stanley*, 632 A.2d 871, 872 (Pa.1993) (citing *Commonwealth v. Petras*, 534 A.2d 483, 485 (Pa.Super.1987)). It is the appellant's responsibility to show that counsel was actually aware of the witness's existence or had a duty to know of the witness. *Id.* "Moreover, Appellant must show how the uncalled witnesses' testimony would have

been beneficial under the circumstances of the case." ***Commonwealth v. Gibson***, 951 A.2d 1110, 1134 (Pa.2008) (internal citations omitted).

The PCRA court acknowledges that the witnesses existed, were prepared and available, and that counsel was aware of their existence. However, it finds that Appellant's claim lacks arguable merit because the affidavits of the witnesses lacked a definitive timeframe such that the "proposed alibi testimony does not place Appellant at home at the time he committed these crimes[.]" PCRA Court Opinion, filed 4/7/2015, at 7.

Appellant's daughter would have testified as follows:

> On June 29, 2007, I was at home at 4050 Neilson Street, Philadelphia, PA. I was with my mother, father, brothers and sisters on the date that my father was arrested. He was working at a restaurant in Cinnaminson, New Jersey, on Route 130. We had moved to Philadelphia from Merrimac, New Jersey, three months or less before the time of his arrest. My dad was still working at that restaurant at the time, and worked almost every day.
>
> He was home with us all day until he left for work. Within seconds after he left, he was arrested by the police. I became scared and went back into the house because they were arresting my dad and I was only ten years old at the time. The police came and told me to get out of the house and that no one was allowed in until they had searched it. If I had been asked to testify, I would have been ready, willing, and able to do so for my father.

Affidavit of D.F., 7/9/2012.

Appellant's wife would have testified in relevant part as follows:

> On the day of the shooting, June 29, 2007, [Appellant] was awakened, we showered together; we dressed and ate. He left the house to go to work on public transportation because our car was broken down. I was at

the door waving good-bye to [him]. My daughter [D.F.] was also at the door with me. We looked with horror when the police grabbed him and placed him in handcuffs.

I immediately ran out of the house to the police to ask what they were doing. When they told me that he was going to be arrested, I spoke with a police woman and said that he was with me. Why is he being arrested? I told her that he had been with me all day until he left.

We were new in the neighborhood and my husband worked a lot. [Appellant] worked hard because we have five children ranging in the age from five to sixteen years old. When he was not working, he would be with me and/or the children. There was no time for [Appellant] to get to know anyone and he really did not know anyone in the area well.

When the policewoman told me that he had shot someone, I was surprised to hear that. I couldn't believe that the police were saying that he shot at anybody because he had been with me the whole day before he left for work.

After his arrest, I spoke with someone from the Office of the Public Defender who I think was the trial lawyer. I told him that my husband was with me all day before he left home so he could not be at a shooting. I told him I spoke to the police immediately after they arrested [Appellant] and told them that. He told me that my testimony was not necessary.

English Translation of Affidavit of Carolyn Matos, 8/14/2012.

Although the affidavits do not state that Appellant opened the door of his home at a precise time, they both state that Appellant was with the affiants for the entire day and that they watched him walk out of the door and get arrested within seconds. The affidavits do not allow for any gap in time during which Appellant could have committed the crimes, because the affiants' eyes were on Appellant between the time he walked out the door

and the time he encountered Detective Gillespie.[8]   The affiants' testimony would have contradicted Detective Gillespie's conclusion that Appellant was the perpetrator.

Although neither affidavit provides the exact time that Appellant left his home for work, the affidavits in their present form are sufficient. Appellant's claim has arguable merit.

Further, the PCRA court's determination that counsel's omission was based on a reasonable trial strategy is not supported by the record.

Appellant's affidavit states:

> 4.) When I presented these facts to Attorney Jordan, he responded by attempting to convince me not to present this crucial evidence by stating that he has a tremendous amount of experience and that this wouldn't be the best course of action.
>
> *    *    *
>
> 6.)  After continually attempting to get Attorney Jordan to use this testimony of my innocence, he insisted that this

_____

[8] The dissent suggests that Appellant's presence at his home does not preclude him from participating in the shooting, because the affidavits do not definitively indicate that Appellant was inside of the house throughout the entire duration of the shooting.  Although the possibility that Appellant could have left his home, committed the shooting, and come back inside before departing for work could be presented upon cross-examination, Appellant's wife indicated in her affidavit that she would have testified that she was with Appellant "all day."  She would have testified that after he woke up, they "showered together," "dressed and ate" before he departed to go to "work on public transportation because [the] car was broken down." English Translation of Affidavit of Carolyn Matos. Being with his wife in their home all day would preclude Appellant from participating in the outside shooting.

> "wasn't going to work anyway," and my testimony would be, "no good because the evidence against you is overwhelming and the jury won't believe you."

Appellant's Affidavit, 6/28/12, at 1.

Appellant's affidavit indicates that counsel did not honor his request to present the witnesses. Moreover, the presentation of alibi witnesses appears to be consistent with counsel's actual trial strategy. In his opening statement, Attorney Jordan stated the following:

> First of all, there is no argument there was a senseless crime that took place on the day in question. The issue we are going to ask that you focus on is who did it? There are numerous individuals out in this neighborhood anywhere from five to eight people. There were other people obviously not involved in this incident. There was [sic] actually children at this incident. These gentlemen, as stated, were chasing, I call it the quad, in the area. They came upon this group of individuals described as black and Hispanics. At some point they open fire. The people in the car had to react quickly or they would have been in serious danger and they did, they pulled out. So their opportunity to observed [sic] the individuals that took place in this assault was lifted….

> It is our position that at the time of this unfortunate event my client who lives in the area **was at home with his wife**. He does not – although he lived in the area, he only lived there for three months. He goes to work, he takes care of his family, he was not involved with the people out in the street.

> As you hear the testimony you will hear the person saw what he thought was a person committed the shooting because he saw him with a gun and then saw him walking away, then he saw my client walking down the street. We would argue is [sic] inconsistent, it's inconsistent that he would move or run into his house, discard the gun, and then come back in the street.

N.T. 8/1/2008, at 34-35 (emphasis added).

From the opening statement, defense counsel's strategy appears to be a mistaken identity defense; Appellant was at home with his wife while someone else was shooting at the victims, and when he departed from his home, the police arrested the wrong person. However, trial counsel offered no testimony or evidence to support this mistaken identity defense. Although counsel might have had some hidden strategy for not presenting the testimony of Appellant's wife and daughter, without an evidentiary hearing, it is impossible to determine what that strategy might be.

We must next determine whether Appellant was prejudiced by counsel's alleged error. If Appellant was not prejudiced by the error, we need not remand for an evidentiary hearing. *See Petras, supra.*

Appellant directs us to *Khalifah, supra,* where this Court reversed a PCRA court order and remanded for an evidentiary hearing where the PCRA court denied an appellant the opportunity to present a witness whose testimony would have contradicted the victim's testimony and may have affected the outcome of the trial. *See* Appellant's Brief at 24, *See also Khalifah*, 852 A.2d at 1240.

As in *Khalifah*, Appellant likely was prejudiced by counsel's omission. Appellant did not have a gun on his person at the time of his arrest, nor was a gun recovered from a search of the surrounding area or his home. *See* N.T., 8/5/2008, at 16, 18-19, 29. Further, the detectives did not conduct a

paraffin test to determine whether Appellant had gunpowder residue on his hands. *Id.* at 29. The only evidence linking Appellant to these crimes is the testimony of other witnesses, who gave varying descriptions of Appellant, and some of whom identified him while he was in the back of a police vehicle.[9] The alibi testimony that he was with his wife and children at the time of the shooting could have very well altered the outcome of the trial.

It is "our duty as an error correcting court … to determine if the PCRA [c]ourt's decision is legally correct and fully supported by the certified record." *Commonwealth v. Glover*, 738 A.2d 460, 466 (Pa.Super.1999).

In denying Appellant relief for his ineffective assistance of counsel claim relating to counsel's failure to call alibi witnesses, the PCRA court reasoned:

> The proposed alibi testimony does not place Appellant at home at the time that he committed these crimes and there are three eyewitnesses to the shooting. ***Clearly, trial counsel considered this proposed testimony in light of the other evidence***. Trial counsel will not be deemed to have rendered ineffective [assistance] if any reasonable basis exists for his actions or inactions. Moreover, in order to show entitlement to relief under the PCRA, Appellant must demonstrate prejudice, i.e., that but

_____

[9] The dissent correctly observes that police found ammunition in Appellant's home and fired cartridge casings on the driveway directly outside of his residence. Appellant does not contest that the crime occurred, or that it occurred in close proximity to his home; he contests that he was the perpetrator. He claims that he was right outside of his home because he lives there, not because he committed a crime there. The only evidence that links Appellant to the crime of which he is being accused is the testimony of the witnesses.

for the failure of trial counsel to call the alibi witnesses, the outcome of the proceedings would have been different, and he must also demonstrate that ineffectiveness of trial counsel was of the sort which in the circumstances of the instant case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. To demonstrate prejudice, Appellant must show that the witness' proposed testimony would have affected the verdict or that such evidence would have been beneficial to his defense. Here, Appellant failed to carry his burden of proof and the PCRA Petition was dismissed. Error was not committed.

PCRA Court Pa.R.A.P. 1925(a) Opinion, filed April 7, 2015, at 7-8 (internal citations omitted; emphasis added).

The PCRA court did not conduct an evidentiary hearing on Appellant's ineffective assistance of counsel claim. The PCRA court's determination that trial counsel "clearly" considered the proposed testimony in light of the other evidence is not supported by testimony from counsel to that effect, and the record does not support such a conclusion. Further, defense counsel's failure to call his alibi witnesses might well have prejudiced the outcome of Appellant's trial.

The PCRA court's decision is neither legally correct nor supported by the certified record.

Order reversed. Case remanded to the PCRA court for an evidentiary hearing on Appellant's ineffective assistance of counsel claim. Jurisdiction relinquished.

Judge Ott joins in the memorandum

President Judge Emeritus Ford Elliott files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/10/2016