659 A.2d 1018

COMMONWEALTH of Pennsylvania

v.

James HOWARD, Appellant.

Superior Court of Pennsylvania.

Submitted March 20, 1995.

Filed May 30, 1995.

338

Karl Baker, Asst. Public Defender, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com.

Before OLSZEWSKI, POPOVICH and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the judgment of sentence made final by operation of law upon the trial court's failure to decide appellant's post-sentencing motion within one hundred and twenty days. The sole issue presented for our review is whether the trial court erred in refusing to suppress the identification and physical evidence seized from appellant. For the reasons set forth below, we affirm.

Before addressing this issue, we will briefly recount the pertinent facts of this case. Michael Thorpe, a driver/deliveryman for the Philadelphia Daily News, was delivering newspapers on the morning of June 24, 1993 at which time he noticed appellant, James Howard. After completing a delivery, Mr. Thorpe was approached by appellant for the ostensi-

ble purpose of purchasing a newspaper. Appellant then pulled out a gun and demanded Mr. Thorpe's money, wallet and a necklace. Mr. Thorpe relinquished possession of these items. Appellant thereafter ran from the area.

Byron Thorpe,[1] a driver/deliveryman for Philadelphia Newspaper, Inc. (P.N.I.), had completed a delivery at approximately 12:30 p.m. on July 16, 1993 when he was suddenly accosted by appellant and another unidentified male who was armed with a handgun. Mr. Thorpe acquiesced in the accomplice's request for money following which appellant and his companion then left.

Philip Rodriguez, another P.N.I. driver/deliveryman, was consummating his delivery to a newsstand at approximately 1:30 p.m. on July 16, 1993 when appellant walked past him. At this point, another male came from behind and stuck a gun into Mr. Rodriguez's ribs. Appellant reappeared and began to untie Mr. Rodriguez's apron, which contained his delivery money. While appellant was in the process of removing the apron, the accomplice took Mr. Rodriguez's wallet. Appellant and the other man then fled from the scene.

Three days after the robberies, Officer Sawicki was patrolling the area in which the crimes took place when he observed appellant getting into a blue car. Because appellant and the vehicle fit the general description of one of the men who had perpetrated the robberies, Officer Sawicki stopped the vehicle. Officer Sawicki discovered that the car was occupied by a woman, her son and appellant. After verifying the woman's identification and ownership of the car, she and her son were permitted to leave. In response to the officer's inquiries, appellant identified himself as "Jack Lighty." Because appellant carried no identification, the police detained appellant for further questioning and accordingly transported him to the police station where he was fingerprinted. Appellant was subsequently released after two hours.

Analysis of appellant's fingerprints revealed his true identity to be that of James Howard. As a result, the police

1. Byron Thorpe is the brother of Michael Thorpe.

compiled a photographic array which included appellant's picture and showed it to Byron Thorpe and Philip Rodriguez later on July 19th. Both men positively identified appellant as one of the men involved in the July 16th robberies. Appellant was thereafter arrested and charged with various offenses arising out of the July 16th incidents.[2] The same photographic array was later shown to Michael Thorpe on July 27th, at which time he likewise positively identified appellant. Appellant was then arrested and charged with various offenses arising out of the June 24th robbery.[3] All of the charges were subsequently consolidated for trial.

Appellant filed a pre-trial motion to suppress his fingerprints, the physical evidence taken from appellant at the time of his lawful arrest on July 21st, the photographic arrays and the identifications made by the victims. Following a hearing on January 3, 1994, the lower court granted the suppression motion with respect to the fingerprints as well as the photographic array shown to Michael Thorpe and the out-of-court identification resulting therefrom. In all other respects, appellant's suppression motion was denied. A jury trial was held in January, 1994 following which appellant was convicted of three counts each of robbery,[4] recklessly endangering another person,[5] and terroristic threats;[6] appellant was also

---

2. There is a discrepancy as to the date of appellant's arrest for the July 16th robberies. Testimony introduced at the suppression hearing indicates that the arrest occurred on July 21st and July 23rd. Suppression Hearing Transcript 1/3/94 at 17, 35 and 38. We need not resolve this discrepancy as it does not affect our disposition. However, in referring to this arrest we will utilize July 21st as the correct date as this is the date referenced in other documentation contained in the certified record.

3. Again, there is a discrepancy in the record regarding appellant's arrest date for the June 24th robbery. Testimony introduced at the suppression hearing indicated that the arrest for this incident occurred on July 27th, whereas other documentation in the record suggested that appellant was not arrested until July 29th. *See* Suppression Hearing Transcript 1/3/94 at 17; Arrest Report. Again, we need not resolve this discrepancy as it does not affect our disposition. However, in referring to this arrest we will utilize July 29th as the correct date as this is the date referenced in the pertinent documentation.

4. 18 Pa.C.S.A. § 3701(a)(1).

5. 18 Pa.C.S.A. § 2705.

6. 18 Pa.C.S.A. § 2706.

convicted of one count each of criminal conspiracy,[7] possession of an instrument of crime [8] and carrying a firearm on a public street.[9] Appellant was sentenced on March 7, 1994 to an aggregate period of seventeen (17) to thirty-four (34) years imprisonment.[10] Appellant thereafter filed a timely post-sentencing motion.[11] The certified record does not contain either a trial court order deciding the motion or an order entered by the clerk of courts indicating that the motion was denied by operation of law. Appellant thereafter instituted this timely appeal on August 10, 1994.[12]

7. 18 Pa.C.S.A. § 903(a).

8. 18 Pa.C.S.A. § 907(a).

9. 18 Pa.C.S.A. § 6108.

10. A sentence of five (5) to ten (10) years was imposed with respect to each of appellant's robbery convictions; these sentences were directed to run consecutively. Appellant received an additional consecutive sentence of two (2) to four (4) years for his firearm conviction. No further sentences were imposed for appellant's remaining convictions.

11. Reference to this motion appears in appellant's notice of appeal and the opinion issued by the trial court. However, the motion is neither identified in the certified docketing statement nor included in the certified record submitted to this court.

12. Appellant was convicted after January 1, 1994; therefore, the amended version of Rule 1410 is applicable. Note, Pa.R.Crim.P., Rule 1410, 42 Pa.C.S.A. (providing that the rule as adopted March 22, 1993 and amended December 17, 1993 is effective as to cases in which the determination of guilt occurs on or after January 1, 1994). Pursuant to the amended rule, post-sentencing motions are now optional rather than mandatory. See id., Rule 1410.B and comment thereto. Where, as here, the defendant elects to file a post-sentencing motion, the trial judge is required to act upon the motion within one hundred and twenty (120) days, unless a thirty (30) day extension is granted at the request of the defendant. Id., Rule 1410.B(3)(a) and (b). If the judge fails to decide the motion or fails to grant an extension of time within the requisite period, the motion is deemed to be denied by operation of law. Id., Rule 1410.B(3)(a) and (b). When a post-sentence motion is denied by operation of law, the clerk of courts is required to enter an order on behalf of the court and furnish defense counsel with a copy thereof. Id., Rule 1410.B(3)(c). See also, Comment, Pa.R.Crim. Rule 9025, 42 Pa.C.S.A. (directing that the clerk of courts must comply with the notice and recording procedures specified in Rule 9025 after an order is entered denying a post-sentencing motion by operation of law in accordance with Rule 1410.B(3)(c)). A defendant must then file his notice of appeal within thirty days of the entry of the order deciding the motion or denying it by operation of law. Id., Rule 1410.A.(2).

Appellant challenges the lower court's refusal to suppress the physical evidence, photographic arrays and the victims' in-court and out-of-court identifications.

When we review the ruling of a suppression court we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much evidence for the defense as, fairly read in the context of the record as a whole[,] remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are [in] error.

*Commonwealth v. Mayhue*, 536 Pa. 271, 300, 639 A.2d 421, 435 (1994) (citation omitted). We will evaluate the decision of the trial court and appellant's arguments in accordance with these principles.

The trial court determined that the police lacked probable cause to detain appellant on July 19th and accordingly suppressed the fingerprint evidence which was taken from appellant at that time. This ruling has not been appealed by the

As applied here, appellant has indicated that his post-sentencing motion was filed on March 15, 1994. The trial court thus had 120 days from this date, or until July 13, 1994 to decide the motion. It does not appear that the trial court either acted upon the motion or granted an extension within this time period. Appellant's motion is thus deemed to have been denied by operation of law. Rule 1410.B.(3)(a), *supra*. Although the motion was denied by operation of law, it does not appear that the clerk of courts entered an appropriate order and notified counsel thereof as mandated by Rules 1410.B(3)(c) and 9024. Despite the clerk of court's failure to enter an appealable order, appellant filed his notice of appeal within thirty days of July 13th, the date on which an order should have been entered. Although the proper procedure would have been for appellant to first praecipe the clerk of courts for entry of an appealable order, *see* Pa.R.A.P., Rule 301(d), 42 Pa.C.S.A., before initiating his appeal, we shall "regard as done that which ought to have been done" and proceed to review appellant's claims. *See, e.g., Commonwealth v. Allen*, 278 Pa.Super. 501, 504–505 n. 3, 420 A.2d 653, 654 n. 3 (1980) (in which this court reached the merits of the appeal even though the lower court's order had never been entered upon the docket). *See also* Pa.R.A.P., Rule 105(a), 42 Pa.C.S.A. (permitting this court to disregard the requirements of the appellate rules in the interest of expediting decision).

Commonwealth and will not be revisited at this juncture. Rather, the issue to be determined is whether the evidence arising out of the unlawful detention and fingerprinting of appellant, *i.e.*, the discovery of appellant's true identity and the identifications derived therefrom, as well as the physical evidence obtained following his lawful arrest, must be suppressed as "fruits of the poisonous tree." With regard to this issue, our Supreme Court has recognized:

> The exclusionary rule has traditionally barred from trial physical, tangible material obtained either during or as a direct result of an unlawful invasion.... [However,] an illegal arrest does not bar all evidence subsequent to that arrest.... [A]ll evidence is [not] fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.... [E]vidence should not be excluded when the connection between the arrest and the evidence obtained ha[s] become so attenuated as to dissipate the taint.

*Commonwealth v. Garvin*, 448 Pa. 258, 265, 293 A.2d 33, 37 (1972) (citations and quotation marks omitted).

The record indicates that appellant was initially detained on July 21st during which time he was fingerprinted and then released. Suppression Hearing Transcript (S.H.T.) 1/3/94 at 32 and 44. Based on the fingerprints, the police were able to discover appellant's true identity. *Id.* The police then obtained a photograph of appellant from their files which had been derived from a previous unrelated arrest; this picture was included in the array shown to the victims. *Id.* at 12–17 and 32. After the victims positively identified appellant, an arrest warrant was issued and appellant was lawfully arrested pursuant thereto. *Id.* at 13–17 and 33–35.

Appellant essentially contends that but for his initial unlawful detention and fingerprinting on July 21st, the police would not have discovered his true name or identity, and thus, would not have been able to pull his photograph from police files for display to the victims. However, the appellate courts have recognized that a defendant's face cannot be a suppressible fruit of an illegal arrest. *See, e.g., United States v. Crews,* 445 U.S. 463, 477–479, 100 S.Ct. 1244, 1253–1254, 63 L.Ed.2d 537, 549–551 (1980) (concurring opinions by Powell and White, JJ., respectively joined by Blackmun and Rehnquist, JJ. and Burger, C.J.); *Commonwealth v. Stein,* 369 Pa.Super. 409, 418 n. 3, 535 A.2d 616, 621 n. 3 (1987), *allocatur denied,* 520 Pa. 574, 549 A.2d 134 (1988). *See also Commonwealth v. Carter,* 537 Pa. 233, 248, 643 A.2d 61, 68 (1994) (citing *Crews* and noting that the defendant himself is not a suppressible fruit of an illegal arrest). As recognized by our Supreme Court, "[n]o law abiding society could tolerate a presumption that but for the illegal arrest the suspect would never have been required to face his accus[e]rs.... We cannot assume that but for the illegal arrest [the defendant] would have remained at large indefinitely." *Commonwealth v. Garvin,* 448 Pa. at 265–266, 293 A.2d at 37–38. Moreover, the courts have refused to suppress identification evidence where it was untainted by any illegal police conduct. *See, e.g., United States v. Crews,* 445 U.S. at 471–477, 100 S.Ct. at 1250–1253, 63 L.Ed.2d at 546–549 (majority opinion by Brennan, J. and concurring opinion by Powell, J.) (where identification evidence antedated the defendant's unlawful arrest, suppression was not required because the evidence was untainted by the constitutional violation); *Commonwealth v. Garvin, supra,* 448 Pa. 258, 293 A.2d 33 (declining to suppress identification evidence, despite the defendant's unlawful arrest, where the illegality did not contribute to either the victims'/witnesses' knowledge or the accuracy of their identification); *Commonwealth v. Stein,* 369 Pa.Super. at 414–418, 535 A.2d at 619–621 (applying *Garvin* and *Crews* and holding that suppression of identification evidence was

unwarranted where it was not derived from illegal police conduct).

■ We do not discern any significant difference between the exhibition of a person and the exhibition of a photograph to the victim following an unlawful detention. In either case, the victim is comparing his/her own mental image of the perpetrator, which existed prior to any unlawful police conduct, with the individual who is shown in person or by photograph. We accordingly find that suppression of the out-of-court identifications was unwarranted pursuant to *Crews, Garvin* and *Stein, supra,* 369 Pa.Super. 409, 535 A.2d 616.

■ We similarly conclude that the photograph used in the arrays as well as the array itself were not subject to suppression. As noted above, appellant's photograph was already in the possession of the police at the time of his unlawful detention due to a prior unrelated arrest. S.H.T. 1/3/94 at 12 and 32. Suppression of the photograph therefore was not required because its existence/acquisition antedated the illegal police conduct. *See United States v. Crews,* 445 U.S. at 475–477, 100 S.Ct. at 1252–1253, 63 L.Ed.2d at 548–550 (opinion by Brennan, J. joined by Stewart and Stevens, JJ. and concurring opinion by Powell, J. joined by Blackmun, J.) (providing that the exclusionary rule enjoins the government from benefiting from evidence it has unlawfully obtained; it does not reach backward to taint information that was in official hands prior to any illegality. The Court thus ruled that the identification evidence was untainted by the constitutional violation because it antedated the unlawful arrest).

■ In addition, the suppression court reviewed the photographs in the array and determined that it was not suggestive, as appellant's picture did not stand out more than the other photos and the men depicted therein all exhibited similar facial and bodily characteristics. S.H.T. 1/3/94 at 14 and 29–30. Nor were the photographs shown to the victims in a suggestive manner. *Id.* at 12–18, 33–34 and 56. The lower court's findings are supported by the record and thus will not be disturbed. *Commonwealth v. Mayhue, supra,* 536 Pa. 271, 639 A.2d 421.

■ The suppression court also did not err in refusing to suppress the physical evidence, *i.e.,* the ace bandage and cast.

The ace bandage and cast were not taken from appellant at the time of his initial illegal detention. These items instead were only seized after appellant's lawful arrest on July 21st. S.H.T. 1/3/94 at 35–36 and 38. Suppression of the evidence was thus unwarranted since it was not the product of the prior unlawful detention. *See, e.g., New York v. Harris,* 495 U.S. 14, 19–21, 110 S.Ct. 1640, 1643–1645, 109 L.Ed.2d 13, 21–22 (1990) (defendant's statement, which was made after his arrest, was not an exploitation of the illegal entry into his home by the police and thus was not barred by the exclusionary rule); *Commonwealth v. Cross,* 508 Pa. 322, 331–332, 496 A.2d 1144, 1149–1150 (1985) (recognizing that the defendant's clothing and personal effects could properly be seized following a lawful arrest).

Finally, the lower court properly refused to suppress the victims' in-court identifications as they were not tainted by the photographic array and were supported by an adequate independent basis. The record demonstrates that the victims all had an ample opportunity to observe appellant at the time the crimes were perpetrated because the robberies occurred during the daylight hours and the victims all stood in close proximity to appellant for a period of several minutes. *See* S.H.T. 1/3/94 at 8–9. *See also* Lineup Application/Preliminary Hearing Transcript, 8/5/93 at 4–13; Lineup Application/Preliminary Hearing Transcript, 8/12/93 at 4–5, 12–13, 16, 23, 29–32, 34–37 and 40–44. The independent basis for the victims' identification is further supported by the detailed descriptions which they provided to the police after the incidents as well as their immediate and unhesitating selection of appellant's picture from the array. *See* S.H.T. 1/3/94 at 9–10, 13–16, 20, 27–28, 41–42, 45–46, 56 and 61–62. Moreover, the photographic array was not suggestive nor was the photographic identification conducted in a suggestive manner. *Id.* at 12–18, 33–34 and 56 and 69. The record further reveals that the victims positively and unequivocally identified appellant at all pertinent stages of this case. S.H.T. 1/3/94 at 14–16; Lineup Application/Preliminary Hearing Transcript, 8/5/93 at 6; Lineup Application/Preliminary Hearing Transcript, 8/12/93 at 12

348

and 29–30. Under these circumstances, suppression of the in-court identifications was unwarranted. *See Commonwealth v. Marsh*, 388 Pa.Super. 610, 616, 566 A.2d 296, 299 (1989) (enumerating the factors to be reviewed which make an in-court identification reliable; an in-court identification following an illegal out-of-court identification is admissible if, considering the totality of the circumstances, it had an independent origin sufficiently distinguishable to be purged of the primary taint).

Judgment of sentence affirmed.