J-S39035-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RAHEIM ALPHONSO WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 1960 MDA 2015 |

Appeal from the PCRA Order November 2, 2015
in the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005490-2011

BEFORE:   STABILE, PLATT,* and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED JULY 26, 2016**

Raheim Alphonso Williams (Appellant) appeals from the November 2, 2015 order which dismissed his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Also before us is a petition to withdraw filed by Appellant's counsel and a no-merit brief pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  We grant counsel's petition and affirm.

This Court offered the following history of the case in Appellant's direct appeal.

> On the night of July 17, 2011, Tyler Knaub and Todd Lippy accompanied their friend Mikey to his house at 729 Jessop Place, York City.  They opened the back door, walked through the kitchen and went into the living room, where they joined two other residents of the house, Jay and Cash. While the five men

*Retired Senior Judge assigned to the Superior Court.

were in the living room, [Appellant] and an accomplice, both of whom were armed, entered the house through the back door. They walked into the living room, and [Appellant] asked if anyone knew where he could find a girl whom he thought lived in the house. When no one could provide the information, [Appellant] and his accomplice, who were both pointing guns at the victims, ordered them to take off their shoes and put the contents of their pockets on the coffee table. They then ordered the men to remove their pants and stand by the front door with their backs to them.

The morning after the robbery, Knaub and Lippy reported the incident to police.

On June 5, 2012, at the conclusion of a two-day trial, a jury convicted [Appellant] of two counts of robbery and two counts of simple assault. On August 1, 2012, the court imposed an aggregate sentence of 15½ to 40 years for the robbery convictions, with no additional sentence for simple assault. The court also ordered [Appellant] to pay restitution.

*Commonwealth v. Williams*, 100 A.3d 322 (unpublished memorandum at 1-2). This Court affirmed Appellant's judgment of sentence, *id.*, and our Supreme Court denied his petition for allowance of appeal on October 7, 2014. *Commonwealth v. Williams*, 101 A.3d 786 (Pa. 2014).

On September 4, 2015, Appellant timely filed *pro se* a PCRA petition. Counsel was appointed, and a hearing was held. Thereafter, the PCRA court denied the petition, and Appellant timely filed the instant appeal. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

In this Court, Appellant's counsel filed a petition to withdraw and a *Turner/Finley* brief raising the following issues that Appellant wants this Court to review:

> I.      Whether the [PCRA] court erred in denying Appellant's PCRA petition when [trial] counsel was ineffective for failing to file a pretrial motion to suppress a photo lineup which was later introduced as evidence at trial?
>
> II.     Whether the PCRA court erred in denying Appellant's PCRA petition when appellate counsel was ineffective for failing to appeal the court's denial of the **Batson**[1] challenge made during *voir dire*?

***Turner*/*Finley*** Brief at 4 (unnecessary capitalization omitted).

Before we may address the potential merit of Appellant's claims, we must determine if counsel has complied with the technical requirements of **Turner** and **Finley**.

> … ***Turner*/*Finley*** counsel must review the case zealously. ***Turner*/*Finley*** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> If counsel fails to satisfy the foregoing technical prerequisites of ***Turner*/*Finley***, the court will not reach the merits of the underlying claims but, rather, will merely deny counsel's request to withdraw. Upon doing so, the court will then take appropriate steps, such as directing counsel to file a proper ***Turner*/*Finley*** request or an advocate's brief.
>
> However, where counsel submits a petition and no-merit letter that do satisfy the technical demands of ***Turner*/*Finley***, the court—trial court or this Court—must then conduct its own

---

[1] **Batson v. Kentucky**, 476 U.S. 79 (1986).

> review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief. By contrast, if the claims appear to have merit, the court will deny counsel's request and grant relief, or at least instruct counsel to file an advocate's brief.

*Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa. Super. 2007) (citations omitted).

We are satisfied that counsel has complied with the technical requirements of *Turner* and *Finley*. Therefore, we will consider the substantive issues contained in counsel's brief.

"Our standard of review of a trial court order granting or denying relief under the PCRA calls upon us to determine 'whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.'" *Commonwealth v. Barndt*, 74 A.3d 185, 192 (Pa. Super. 2013) (quoting *Commonwealth v. Garcia*, 23 A.3d 1059, 1061 (Pa. Super. 2011)).

In his PCRA petition, Appellant raised two claims of ineffective assistance of counsel. "It is well-established that counsel is presumed effective, and the defendant bears the burden of proving ineffectiveness." *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). To overcome this presumption, Appellant must show each of the following: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or

her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Id.* Appellant's claim will be denied if he fails to meet any one of these three prongs. *Id.*

Appellant's first issue is whether trial counsel was ineffective in failing to file a motion to suppress, as unduly suggestive, a photo lineup which ultimately was admitted into evidence at trial. *Turner*/*Finley* Brief at 7.

"'Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances.'" *Commonwealth v. Fulmore*, 25 A.3d 340, 346 (Pa. Super. 2011) (quoting *Commonwealth v. Carson*, 741 A.2d 686, 697 (Pa. 1999)). "Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion." *Id.* (internal quotation marks and citation omitted).

"Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than those of the others, and the people depicted all exhibit similar facial characteristics." *Commonwealth v. Fisher*, 769 A.2d 1116, 1126 (Pa. 2001). "A photographic identification is unduly suggestive if, under the totality of the circumstances, the identification procedure creates a substantial likelihood of misidentification." *Commonwealth v. DeJesus*, 860 A.2d 102, 112 (Pa. 2004).

Appellant complained that he was only one of two men pictured who wore his hair in cornrows while the others were bald or had shorter hairstyles. *Turner*/*Finley* Brief at 7. Further, Appellant contended that not all of the men depicted were of the same skin tone as he. *Id.*

Our review of the photo array confirms counsel's assertion that the claim lacks merit. Although not all of the men have identical coloring or hair styles, all fit within the witnesses' description of the perpetrators as "two black males, different heights and different skin complexion, darker and lighter." *Turner*/*Finley* Brief at 7 (quoting N.T., 10/21/2015, at 9). More importantly, nothing about the array causes Appellant's photo to stand out from the others to suggest that he be identified. *See Commonwealth v. Howard*, 659 A.2d 1018, 1023 (Pa. Super. 1995) (affirming the denial of a suppression motion where the "appellant's picture did not stand out more than the other photos and the men depicted therein all exhibited similar facial and bodily characteristics").

Because the underlying suppression issue lacks merit, counsel was not ineffective in failing to pursue it. *Commonwealth v. Keaton*, 82 A.3d 419, 426 (Pa. 2013) (quoting *Commonwealth v. Pursell*, 724 A.2d 293, 304 (Pa. 1999)) ("[I]t is axiomatic that [trial] counsel will not be considered ineffective for failing to pursue meritless claims.").

Appellant's remaining issue is whether direct appeal counsel was ineffective in failing to appeal the trial court's denial of Appellant's **Batson** challenge. **Turner**/**Finley** Brief at 9.

> In **Batson**, the United States Supreme Court held that the Equal Protection Clause forbids a prosecutor from challenging potential jurors solely on account of their race. The framework for analyzing a Batson claim is three-fold:
>
> > [F]irst, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.
> >
> > * * *
> >
> > The second prong of the **Batson** test, involving the prosecution's obligation to come forward with a race-neutral explanation of the challenges once a *prima facie* case is proven, does not demand an explanation that is persuasive, or even plausible. Rather, the issue at that stage is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.
> >
> > If a race-neutral explanation is tendered, the trial court must then proceed to the third prong of the test, *i.e.*, the ultimate determination of whether the opponent of the strike has carried his burden of proving purposeful discrimination. It is at this stage that the persuasiveness of the facially-neutral explanation proffered by the Commonwealth is relevant.

*Commonwealth v. Williams*, 980 A.2d 510, 529-30 (Pa. 2009) (quoting *Commonwealth v. Cook*, 952 A.2d 594, 602-03 (Pa. 2008)) (citations, quotation marks, and emphasis omitted).

"[A] trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal and will not be overturned unless clearly erroneous." *Commonwealth v. Roney*, 79 A.3d 595, 619 (Pa. 2013) (quoting *Williams*, 980 A.2d at 531). "Such great deference is appropriate and warranted because the trial court, having viewed the demeanor and heard the tone of voice of the attorney exercising the challenge, is uniquely positioned to make credibility determinations." *Id.*

The PCRA court, which also sat as the trial court, offered the following description of Appellant's *Batson* challenge at trial:

> Defendant is African-American. During trial, [trial counsel] raised a *Batson* challenge when the prosecutor moved to strike the only African-American juror on the jury panel. The prosecutor explained three reasons for striking the juror. First, because the juror was a nursing assistant, and the prosecutor likened the profession to clergy or teachers, who[m] the prosecutor categorized as having a greater amount of sympathy generally. Second, the juror failed to make eye-contact with the prosecutor, and third because the juror lived in an area [(South Queen Street)] where her last name [(Johnson)] was associated by police with criminal activity.

PCRA Court Opinion, 11/2/2015, at 4 (footnote omitted). The trial/PCRA court determined that Appellant made his *prima facie* showing and that the

- 8 -

Commonwealth offered race-neutral reasons for the strike, and gave the following explanation for its decision to deny the challenge:

> I am going to find that I don't believe that the Commonwealth intended to use this in a racial manner. I think the reason stated for striking her [] based on where she lived is weak, and it raises concern with the [trial c]ourt because that is a predominantly African-American neighborhood.
>
> [The Commonwealth's presumption] that because somebody is named Johnson and must be related to a bunch of criminal Johnsons, also has a taste about it that is not in itself as neutral as this [c]ourt would like to hear in the circumstances that she is the sole African-American on this panel.
>
> However, putting that aside I find that the rational[e] about striking the nurses, teachers and clergy is a racially neutral one. The lack of eye contact [-] you have to give a certain level of deference to counsel for either side to use their experience and knowledge on how people answer questions in exercising challenges, so I will deny the motion at this point.

N.T., 6/4-5/2012, at 95.

Thus, the PCRA court gave serious consideration to Appellant's *Batson* challenge but ultimately was convinced, based upon the totality of the circumstances, that the Commonwealth was not guilty of purposeful discrimination. Our review of the record reveals no reason why we "should not extend great deference to the PCRA court's ruling on the question of the prosecutor's discriminatory intent or lack thereof." *Roney*, 79 A.3d at 622. Accordingly, the claim on appeal challenging the court's ruling on the *Batson* challenge would not have merited Appellant relief. Appellant's

appellate counsel was not ineffective in failing to pursue this non-meritorious claim on appeal.

Because we agree with Appellant's counsel that none of the issues Appellant raised in his PCRA petition has merit, we grant his petition to withdraw and affirm the order dismissing Appellant's PCRA petition.

Petition to withdraw granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2016