J. S53033/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
                                                        :          PENNSYLVANIA
                           v.                           :
                                                        :
VICTOR DICKERSON,                        :          No. 734 EDA 2016
                                                        :
              Appellant                  :


Appeal from the Judgment of Sentence, November 19, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0012554-2014


BEFORE:  BENDER, P.J.E., OLSON, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:                **FILED JUNE 06, 2018**

Victor Dickerson appeals from the November 19, 2015 aggregate judgment of sentence of 2½ to 5 years' imprisonment, to be followed by 36 months' probation, imposed after the trial court found him guilty of receiving stolen property and unauthorized use of an automobile.[1]  After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts of this case as follows:

> Ms. Pamela Hill testified that on September 14, 201[4] at approximately 12:00 p.m., she observed a white Subaru crash into a utility pole in the area of 200 E. Johnson Street, Philadelphia, Pennsylvania. The vehicle was driven by [appellant] at the time of the crash.  Ms. Hill initially stated that she pulled into a parking lot in a vehicle to take out packages. Shortly thereafter she observed the vehicle drive down the street and crash into the pole.  Ms. Hill

---

[1] 18 Pa.C.S.A. §§ 3925(a) and 3928(a), respectively.

testified that she ran to the end of the parking lot and saw [appellant] exit the vehicle shortly after he crashed. Ms. Hill observed [appellant] retrieve an object from the passenger's seat of the vehicle. Ms. Hill then observed [appellant] lift the driver's seat of the vehicle up and retrieve a duffle bag. [Appellant] retrieved four bags in total from the vehicle: "a green bag, two black bags out of the passenger's seat and one out of the trunk." Ms. Hill then called 911 to inform the authorities of [appellant]'s actions. [Appellant] then walked up the opposite side of the street and passed by Ms. Hill, proceeding to turn left down Ross Street. Thereafter, Ms. Hill observed a young woman exit her home on E. Johnson Street and enter [appellant]'s vehicle to retrieve paperwork from the glove compartment.

Ms. Hill testified that [appellant] returned not long after from Ross Street to the scene of the crash. The young woman who entered the vehicle to retrieve paperwork exited the vehicle as [appellant] returned to the scene. [Appellant] reentered the vehicle to retrieve a cell phone and then walked back down Ross Street. Ms. Hill explained that [appellant] did not have any of the bags he originally retrieved from the vehicle on his person when he returned to the scene of the accident. Ms. Hill provided that she was approximately fifteen (15) feet away from [appellant] when she initially observed him exit the crashed vehicle. When he walked by her on the street, she then observed him from an even closer distance.

After [appellant] fled the scene of the incident for a second time, a police officer came up and briefly spoke to Ms. Hill. The police officer explained that Ms. Hill's presence was required to identify an individual believed to be [appellant]. Thereafter, two police officers returned to the scene with [appellant] for identification. Ms. Hill observed [appellant] exit the police officers' vehicle wearing a different set of clothes from during [sic] the time of the accident. Ms. Hill proceeded to make a positive identification of

[appellant] despite his changed clothes. Ms. Hill testified that she based her identification on [appellant]'s face.

Ms. Hill further testified that she was a passenger in a vehicle when she travelled to the area of 200 E. Johnson Street on September 14, 201[4], where she observed [appellant]. After [appellant] crashed into the pole, Ms. Hill described the vehicle as tipped sideways on the street. Ms. Hill explained that [appellant]'s back was facing her when he initially exited the vehicle from the driver's side. [Appellant] exited the vehicle with several bags in his possession and then walked in her direction on the opposite side of the street. Ms. Hill stated that the car accident occurred on the opposite side of the street from where she was originally located. There were no other vehicles between Ms. Hill and [appellant] when he crashed and initially exited the vehicle, providing her with an unobstructed view.

Ms. Hill specified that she was initially located behind a tree in the parking lot when the car driven by [appellant] crashed into the pole. After the accident, she walked out of the parking lot to approach the scene and see if [appellant] was safe. Ms. Hill then observed [appellant] retrieve several bags and exit the vehicle. Ms. Hill explained that while she is far-sighted, she was wearing her corrective lenses on the date in question. She immediately thereafter called the police and gave a description of an individual wearing a white t-shirt, blue jeans, a jacket, and white sneakers. Ms. Hill acknowledged that she did not include height, weight, or whether the individual had facial hair or glasses in her description to the police over the phone.

Ms. Hill testified that [appellant] was still wearing a white t-shirt, blue jeans, a jacket, and white sneakers when he returned to the vehicle approximately five minutes after the initial crash. She also heard [appellant] say to a young lady at the scene that he was retrieving a cell phone. Ms. Hill

stated that [appellant] then fled for a second time toward Ross Street and passed by her again as she awaited the arrival of police. A police officer then arrived at the scene and asked Ms. Hill if she could identify [appellant]. Thereafter, a marked police sports utility vehicle (SUV) drove up to the scene with two police officers in the front of the vehicle and [appellant] in the back seat. Ms. Hill testified that the two police officers then escorted [appellant] in handcuffs out of the police SUV for identification. At that time she was roughly thirty (30) to forty (40) feet away from [appellant]. Ms. Hill stated that [appellant] was now wearing a green t-shirt when he exited the police SUV instead of the white t-shirt from earlier.

Philadelphia Police Officer Dora Crenshaw testified that she was on duty on September 14, 2014 at approximately 12:40 p.m. when she received a radio call regarding an automobile accident on the 200 block of E. Johnson Street, Philadelphia. Officer Crenshaw received flash information describing [appellant] as a black male wearing a white t-shirt, blue jeans, and a white hat. The flash informed Officer Crenshaw that [appellant] had fled the scene with several bags in his possession.[2] Officer Crenshaw observed a male matching the description of [appellant] on the 800 block of E. Washington Lane and proceeded to stop him. Officer Crenshaw approached and asked him for "his name and everything, where he was coming from." [Appellant] failed to initially acknowledge Officer Crenshaw's questions which led her to call for back-up. Officer Crenshaw testified that as her back-up arrived and apprehended [appellant] on the 800 block of E. Washington Lane, she then went to the scene of the crash. At the scene she observed that a white Subaru had crashed

---

[2] On cross-examination, Officer Crenshaw clarified that the radio flash was for a black male with a white t-shirt and blue jeans heading in a southerly direction. (Notes of testimony, 7/8/15 at 30-31; Defense Exhibit D-3.) The additional information that he was wearing a white hat and carrying bags was obtained from Hill at the scene, after appellant had been stopped. (***Id.***)

against a utility pole. As Officer Crenshaw looked inside the vehicle and located registration and insurance paperwork on the driver's seat, Ms. Hill approached Officer Crenshaw and stated that she was the eyewitness that had called the authorities. Officer Crenshaw asked Ms. Hill to describe [appellant] to her. Ms. Hill described [appellant] as wearing a white bucket hat. Recognizing that the individual she had stopped moments earlier was wearing a white bucket hat, Officer Crenshaw proceeded to radio her back-up to bring [appellant] to her location in order to obtain a positive identification from Ms. Hill.

Officer Crenshaw testified that only a few minutes passed between the time she initially received the radio call of the accident to when she directly observed [appellant] on the 800 block of E. Washington Lane. She stated that this location was approximately half a mile to a mile away from the scene of the crash. On cross-examination, Officer Crenshaw further testified that she was in a marked police vehicle on the day of the accident, alone on patrol, and learned of the auto accident at 200 E. Johnson Street through the flash. Officer Crenshaw initially testified that the flash described a black male wearing a white hat, white t-shirt, and blue jeans, as well as carrying bags and fleeing westbound on E. Johnson Street towards Magnolia Street. However, the flash from the radio call for the accident actually stated that the black male was fleeing south from the scene of the crash. Officer Crenshaw conceded that the information she included in her initial testimony was not identical to the description given in the radio call containing the flash.

On redirect, Officer Crenshaw also clarified that the flash did not contain any information pertaining to [appellant] wearing a hat or having bags in his possession. However, Officer Crenshaw explained that she later obtained information pertaining to [appellant]'s hat and bags from Ms. Hill at the scene of the crash. Officer Crenshaw ultimately discovered

[appellant] northeast of the scene of the crash. She explained that the initial radio call she received was mistaken in regards to the direction that [appellant] had fled. Officer Crenshaw explained that the flash stated [appellant] was heading west due to the fact [appellant] "ran from the vehicle and went west on Johnson from the vehicle." Upon apprehending [appellant], she described him as wearing a tan shirt, a black jacket, a black long sleeve shirt, and blue jeans.

Officer Crenshaw testified that a 75-229 was completed for this case. On the 229 there was no mention of a hat on [appellant]'s person nor any bags in his possession. Officer Crenshaw did not complete a property receipt for either the hat or any of the bags. Officer Crenshaw explained that she only created a property receipt for the vehicle involved in the accident. She stated that the police paperwork noted [appellant]'s facial hair, height of five (5) feet eleven (11) inches, weight of one-hundred and fifty-five (155) pounds, and medium complexion.

Officer Crenshaw commanded [appellant] to stop and asked for his name when she first encountered him. Officer Crenshaw testified that she frisked [appellant] for her safety but did not find anything on his person. She then observed two bags in his possession and conducted a search of the bags before she reported to the scene of the accident. She discovered another bag inside [appellant]'s green duffel bag. Overall, [appellant] solely had clothing and beer in the bags. Officer Crenshaw also testified that she was not informed by Ms. Hill whether or not [appellant] was intoxicated. Officer Crenshaw testified that she made no notes on [appellant] being intoxicated and did not arrest him for Driving Under the Influence. [Appellant] was in the backseat of the police SUV and in handcuffs when he was taken to scene of the accident and taken out of the vehicle for identification.

When questioned about Commonwealth Exhibit 1 (C-1), the 75-48, Officer Crenshaw confirmed that she completed the Philadelphia non-reportable accident report for the accident in question. She stated that it contained the VIN number for the vehicle that was involved in the accident. On cross-examination, Officer Crenshaw testified that there were no signs of forced entry into the vehicle, damage to the steering column, or damage to the VIN when she approached and examined the vehicle on the day of the incident. [Appellant] did not attempt to flee or resist arrest. Officer Crenshaw stated that [appellant] was solely arrested for the circumstances surrounding the automobile accident, not for any other warrants or causes.

A stipulation was entered by and between counsel that if called to testify, Ms. Barbara Baumbach, the owner of a white 2004 Subaru Forester with VIN ending in 473668, would state that she last saw her vehicle on September 2, 2014 when she left to go on vacation. Further, upon her return from vacation on September 10, 2014, the vehicle was gone and Mrs. Baumbach reported it stolen. Pursuant to this stipulation, a vehicle theft report containing a full VIN number and the vehicle owner's signature was marked and moved into evidence as Commonwealth Exhibit 2 (C-2). The Defense marked and moved Defense Exhibits D-1 through D-5, referring to the Motion to Suppress, into the record.

Trial court opinion, 10/6/16 at 2-9 (citations to notes of testimony and footnote omitted).

On September 14, 2014, appellant was arrested and charged with, *inter alia*, receiving stolen property and unauthorized use of an automobile in connection with this incident. On December 19, 2014, appellant filed an *omnibus* pre-trial motion to suppress all physical evidence obtained from

the stop of his person, as well as Hill's out-of-court identification. (*See* "***Omnibus*** Pre-Trial Motion to Suppress Evidence," 12/19/14 at 1-2.) Appellant filed a second ***omnibus*** pre-trial suppression motion on February 2, 2015. Following a hearing, the trial court denied appellant's suppression motions on July 8, 2015. Appellant waived his right to a jury and proceeded to a bench trial that same day. Following the waiver trial, appellant was found guilty of one count each of receiving stolen property and unauthorized use of a motor vehicle.[3] As noted, the trial court sentenced appellant to an aggregate term of 2½ to 5 years' imprisonment, to be followed by 36 months' probation, on November 19, 2015. Subsequently, on February 23, 2016, appellant's direct appeal rights were reinstated ***nunc pro tunc***, and appellant filed a timely notice of appeal on March 3, 2016.[4]

On appeal, appellant raises the following issues for our review:

> 1. Was not the evidence insufficient to prove appellant guilty of receiving stolen property or unauthorized use of an automobile where the Commonwealth did not prove beyond a reasonable doubt that appellant was the perpetrator as the sole evidence was that appellant possessed a vehicle that had been

---

[3] The record reflects that appellant was also found guilty of one count of accidents involving damage to attended vehicle or property, 75 Pa.C.S.A. § 3743(a); however, the trial court granted appellant's oral motion for extraordinary relief in the nature of a motion for judgment of acquittal as to that charge. (*See* motion for extraordinary relief, 11/16/15, certified record at no. 81; trial court order, 11/19/15, certified record at no. 84.)

[4] Appellant and the trial court have complied with Pa.R.A.P. 1925.

stolen two weeks earlier, there were no signs of forced entry or other indicia of a stolen car, the car was operated with keys, and appellant was cooperative with police?

2. Did not the trial court err in denying appellant's motion to suppress the out-of-court identification evidence and physical evidence as direct fruits of a seizure of appellant made without reasonable suspicion or probable cause?

3. Did not the trial court err in denying appellant's motion to suppress out-of-court and in-court identification evidence, where the circumstances of the out-of-court identification by the complainant were unduly suggestive, the identification itself was unreliable and where the Commonwealth did not prove by clear and convincing evidence that the in-court identification had an independent basis sufficient to purge the taint of the out-of-court identification?

Appellant's brief at 4.

Appellant first argues that there was insufficient evidence to sustain his convictions for receiving stolen property and unauthorized use of an automobile. (*Id.* at 13.) We disagree.

> Whether the evidence was sufficient to support the conviction presents a matter of law; our standard of review is *de novo* and our scope of review is plenary. In conducting our inquiry, we
>
> > examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth

> may sustain its burden by means of wholly circumstantial evidence.

***Commonwealth v. Biesecker***, 161 A.3d 321, 326 (Pa.Super. 2017) (internal citations omitted).

A person will be found guilty of the crime of receiving stolen property "if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner."  18 Pa.C.S.A. § 3925(a).  For purposes of this section, "receiving" is defined as "acquiring possession, control or title, or lending on the security of the property."  ***Id.*** at § 3925(b).  The Commonwealth may sustain its burden of proof under Section 3925 by means of circumstantial evidence.  ***See Commonwealth v. Robinson***, 128 A.3d 261, 265 (Pa.Super. 2015) (finding that the guilty knowledge required to convict a defendant of receiving stolen property, like all culpable mental states, may be inferred from circumstantial evidence).

The crime of unauthorized use of a motor vehicle is defined as follows:

> **(a)** **Offense defined.--**A person is guilty of a misdemeanor of the second degree if he operates the automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle of another without consent of the owner.

18 Pa.C.S.A. § 3928(a).

> [A] conviction for unauthorized use of a vehicle must be predicated on proof that the defendant operated the vehicle without the owner's consent and that the

> defendant knew or had reason to know that he lacked the owner's permission to operate the vehicle.

***Commonwealth v. Carson***, 592 A.2d 1318, 1321 (Pa.Super. 1991) (citations omitted), ***appeal denied***, 600 A.2d 533 (Pa. 1991)

Instantly, appellant contends that the Commonwealth failed to prove he was the driver of the vehicle in question. (Appellant's brief at 14.) Appellant also argues that there were no physical manifestations of theft, ***e.g.***, a broken steering column or obliterated VIN number, and that there was no evidence of consciousness of guilt. (***Id.*** at 15-17.) Appellant further maintains that he cooperated with police and did not attempt to flee. (***Id.*** at 17.)

Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we find that there was ample evidence for the trial court to conclude that appellant was guilty of receiving stolen property and unauthorized use of an automobile. As noted above, Hill identified appellant as the driver of the stolen vehicle. While there were no signs of forced entry into the vehicle or damage to the steering column, appellant's behavior was indicative of a guilty conscience. Appellant left the keys, registration, and insurance paperwork inside the crashed vehicle, retrieved his bags, and left the scene. (Notes of testimony, 7/8/15 at 25, 52.) A short time later, appellant returned to the vehicle to get his cell phone. (***Id.*** at 9.) Officer Crenshaw located appellant across from a train station, and when confronted, appellant initially failed to acknowledge

Officer Crenshaw's questions. (*Id.* at 24-25, 36.) In addition, there was sufficient circumstantial evidence that appellant changed his clothes immediately after the crash. The driver was described as a black male wearing a white t-shirt, blue jeans, and a white hat, and carrying bags. (*Id.* at 24.) When Officer Crenshaw encountered appellant, he was wearing a tan shirt, a black long-sleeved shirt, and a black jacket. (*Id.* at 33.) The trial court, sitting as fact-finder, made the reasonable inference that appellant abandoned the vehicle, retrieved all of his belongings, and changed his clothes in an attempt to conceal his identity. (*Id.* at 60-63.) Based on the foregoing, we discern no abuse of discretion in reaching these conclusions. Accordingly, appellant's claim that there was insufficient evidence to sustain his convictions must fail.

Appellant next argues that the trial court abused its discretion in denying his motion to suppress both the physical evidence obtained from Officer Crenshaw's stop of his person, as well as Hill's subsequent out-of-court identification. (Appellant's brief at 17.)

Our standard of review when addressing a challenge to a trial court's denial of a suppression motion is well settled.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the

> Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), *appeal denied*, 135 A.3d 584 (Pa. 2016).

It is well settled that "[t]he Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa.Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." *Commonwealth v. Reppert*, 814 A.2d 1196, 1201 (Pa.Super. 2002) (citation omitted). Courts in this Commonwealth have recognized three types of interactions between members of the public and the police: a mere encounter, an investigative detention, and a custodial detention.

> A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond. An investigatory stop, which subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute an arrest, requires a reasonable suspicion that criminal activity is afoot. A

> custodial search is an arrest and must be supported
> by probable cause.

**Commonwealth v. Fuller**, 940 A.2d 476, 479 (Pa.Super. 2007) (citations and internal quotation marks omitted).

In evaluating whether an interaction rises to the level of an investigative detention, "the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders." **Commonwealth v. Stevenson**, 832 A.2d 1123, 1127 (Pa.Super. 2003) (citation omitted). Courts in this Commonwealth have mandated that law enforcement officers, prior to subjecting a citizen to an investigatory detention, "must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity." **Commonwealth v. Barber**, 889 A.2d 587, 593 (Pa.Super. 2005) (citation omitted). "Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances." **Commonwealth v. Brown**, 996 A.2d 473, 477 (Pa. 2010). An appellate court must give weight "to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention." **Id.** (citation omitted). Police officers, however, "need not personally observe the illegal or suspicious conduct, but may rely upon the information

of third parties, including tips from citizens." ***Commonwealth v. Smith***, 904 A.2d 30, 36 (Pa.Super. 2006) (citation and internal quotation marks omitted).

We are mindful of the fact that,

> the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

***Commonwealth v. Hughes***, 908 A.2d 924, 927 (Pa.Super. 2006) (citations and internal quotations omitted).

Instantly, appellant contends that Officer Crenshaw lacked reasonable suspicion to stop him on the day in question. (Appellant's brief at 17.) In support of this contention, appellant avers that when he was stopped, he was not engaged in any suspicious activity and was wearing different clothing than the individual described in the radio flash. (***Id.*** at 19.) Appellant further contends that if the detention was unlawful, then all physical evidence as well as Hill's out-of-court identification must be suppressed as fruit of the poisonous tree.[5] (***Id.*** at 21-22.)

Preliminarily, we agree with appellant that Officer Crenshaw lacked the requisite reasonable suspicion of criminal activity to justify an investigative

---

[5] We note that, "[t]he 'fruit of the poisonous tree' doctrine excludes evidence obtained from, or acquired as a consequence of, lawless official acts." ***Commonwealth v. Johnson***, 68 A.3d 930, 946 (Pa.Super. 2013) (citations omitted).

stop or detention. Specifically, the record reveals that on the afternoon of September 14, 2014, Officer Crenshaw responded to a radio call of an auto accident on the 200 block of East Johnson Street. (Notes of testimony, 7/8/15 at 23-24.) Officer Crenshaw testified that the radio flash in question described a black male heading southbound carrying three bags and wearing a white t-shirt, blue jeans, and white hat. (*Id.* at 24, 31.) Shortly thereafter, Officer Crenshaw encountered appellant approximately one-half mile to one mile from the accident scene, stopped him, and seized the bags he was carrying. (*Id.* at 24, 26, 37.) Despite Officer Crenshaw's initial testimony to the contrary, however, at no point did the radio flash indicate that the individual who fled the scene was carrying any bags. (*Id.* at 24, 31.) Officer Crenshaw acknowledged on cross-examination that the additional information that appellant was wearing a white hat and carrying bags was obtained from Hill at the scene of the accident, after appellant had already been stopped and refused to answer her questions. (*Id.* at 24-25, 29-31.) Moreover, the record reflects that appellant was stopped north of the accident scene, not south, and was wearing a tan shirt, a long-sleeved black shirt, and a black jacket. (*Id.* at 30-31.)

Despite our agreement with appellant that Officer Crenshaw lacked reasonable suspicion to detain him, we do not find that the physical evidence and Hill's subsequent out-of-court identification is suppressible as fruit of the poisonous tree. In reaching this conclusion, we acknowledge our recent

decision in ***Commonwealth v. Santiago***, 160 A.3d 814 (Pa.Super. 2017), ***appeal granted in part***, 179 A.3d 455 (Pa. 2018). ***Santiago***, however, is distinguishable from the instant matter. ***Santiago*** involved a Commonwealth appeal from an order granting a defendant's motion to suppress the in-court and out-of-court identification testimony of a police officer who, in violation of the Fourth Amendment, conducted a warrantless search of defendant's cell phone. ***Id.*** at 816. Later, the police officer ascertained appellant's identity based upon information he learned during the illegal search of the cellular telephone. ***Id.***

Under that factual scenario, the ***Santiago*** court affirmed the order of the trial court, in part, concluding that the officer's out-of-court identification of defendant was fruit of the poisonous tree, and thus, inadmissible, due to the fact that the officer conducted a warrantless search of defendant's cell phone in order to ascertain his identity. ***Id.*** at 827-828. The ***Santiago*** court did so, however, only because the person who made the out-of-court identification was the police officer who conducted the illegal search. ***See id.*** at 828. The ***Santiago*** court recognized that previous decisions by this court and our supreme court have held that out-of-court identifications by individuals that are not making the unconstitutional search or seizure cannot be suppressed as fruit of the poisonous tree. ***See id.*** On the contrary, courts in this Commonwealth have always allowed out-of-court

identifications that are only tangentially connected with unlawful searches and seizures; particularly, out-of-court identifications made by third parties.

The facts of the instant matter are more closely aligned to that of *Commonwealth v. Garvin*, 293 A.2d 33 (Pa. 1972).[6]  *Garvin* involved a police officer who illegally stopped a defendant and then transported him to the scene of the robbery, where the victim identified him.  *Id.* at 35.  The defendant moved to suppress the out-of-court identification as fruit of the poisonous tree, and our supreme court rejected this argument.  *Id.* at 37-38.  The *Garvin* court held that the unlawful arrest "merely provided the

---

[6] We recognize that on January 22, 2018, our supreme court granted allowance of appeal, in part, in *Santiago* to determine the following issue as stated by the petitioner in *Santiago*:

> Is not the Superior Court's published opinion applying the fruit of the poisonous tree doctrine to in-court identification testimony inconsistent with controlling Fourth Amendment United States Supreme Court precedent and Article I, § 8, and does not its reliance on overly broad language in *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (Pa. 1972), necessitate this Court's guidance and explicit rejection of *Garvin* and its progeny?

*Santiago*, 179 A.3d 455.

Until our supreme court determines that our application of the fruit of the poisonous tree doctrine with respect to in-court identification testimony as set forth in *Santiago* is inconsistent with the United States and Pennsylvania constitutions, it remains the law of this Commonwealth.  *See Commonwealth v. Forbes*, 867 A.2d 1268, 1279 (Pa.Super. 2005) (reiterating that "[i]t is well settled . . . that until the Supreme Court overrules a decision of this Court, our decision is the law of this Commonwealth" (citation omitted)).

means for the confrontation with [the victim] more promptly than would otherwise have been the case." *Id.* at 38.

Likewise, in the case *sub judice*, Officer Crenshaw detained appellant without reasonable suspicion and then transported him to the scene of the accident, where Hill identified him as the individual who fled the scene. Thus, the illegal detention merely hastened Hill's identification of appellant. A hastened identification does not connect unlawful police activity to ordinary eyewitness observations, much less subject eyewitness testimony to suppression as fruit of the poisonous tree.

As a panel of this court noted in *Santiago*, we have consistently applied *Garvin*'s holding in similar cases. For example, in *Commonwealth v. Howard*, 659 A.2d 1018 (Pa.Super. 1995), this court addressed a scenario where a defendant was illegally detained and fingerprinted, and as a result of this illegal detention, the police were able to learn his true identity and showed his picture to the victim. *Id.* at 1020-1021. The victim positively identified the defendant as the perpetrator, and the defendant moved to suppress this out-of-court identification as fruit of the poisonous tree. *Id.* at 1021-1022. The *Howard* court concluded that, "no law abiding society could tolerate a presumption that but for the illegal arrest the suspect would never have been required to face his [or her] accusers." *Id.* at 1022 (citations omitted). As in *Garvin*, the individual who made the out-of-court identification was not responsible for the illegal detention.

Accordingly, the **Howard** court held that the trial court properly denied the defendant's suppression motion. **Id.** at 1023.

Here, it is apparent that **Garvin** and **Howard**, rather than **Santiago**, control in this matter. Hill witnessed the accident and ensuing events before Officer Crenshaw detained appellant at least one-half mile away from where the stop occurred. Hill was not involved with appellant's detention in any way, had no prior communication with Officer Crenshaw, and her observations arose independently from Officer Crenshaw's police activity. Eventually, appellant would have confronted Hill as the witness to the events in question. Based on the foregoing, we find that the trial court did not abuse its discretion in denying appellant's motion to suppress the physical evidence and Hill's out-of-court identification as fruit of the poisonous tree.

In his final claim, appellant contends that the out-of-court identification procedure was unduly suggestive because the police transported him to the accident scene in handcuffs in the back of a police SUV. (Appellant's brief at 23-24.) According to appellant, the police informed Hill that they had someone in custody and asked her to identify him. (**Id.**) Appellant also argues that the out-of-court identification was unreliable given discrepancies in the description of the perpetrator and Hill's distance from appellant at the time of her identification. (**Id.** at 24-25.) For the following reasons, we disagree.

> As both the Pennsylvania Supreme Court and this Court have recognized, the suggestiveness of police

> tactics in the identification process is one factor to consider in determining whether to admit identification evidence, but suggestiveness alone will not necessarily cause the evidence to be excluded. Instead [i]t is the likelihood of misidentification which violates a defendant's right to due process, and it is this which [is] the basis of the exclusion of evidence. The United States Supreme Court has stated that a pre-trial identification will not be suppressed unless it can be shown that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Commonwealth v. Vanderlin*, 580 A.2d 820, 824 (Pa.Super. 1990) (citations and internal quotation marks omitted). "[T]he reliability of an identification is the linch pin [sic] in determining whether the identification testimony is admissible. Courts must look to the totality of the circumstances to determine whether an identification is reliable." *Id.* (citation omitted).

Instantly, Hill testified that she saw appellant from less than 15 feet away and could clearly see his face. (Notes of testimony, 7/8/15 at 9-10.) Hill further testified that although appellant had changed his shirt, she was able to identify him from his face, and she "looked at him dead in his eyes like he's looking at me now." (*Id.* at 11, 22.) The record further reflects that Hill made the on-scene identification just 20 to 25 minutes after the incident. (*Id.* at 11.)

Upon review, we find that appellant has failed to demonstrate that Hill's out-of-court identification was unreliable or that the procedure was

impermissibly suggestive. Appellant complains that he was handcuffed in the back of a police SUV and that the police asked Hill to make an identification. (*Id.* at 20-21, 38.) However, the fact that appellant was handcuffed and the officers asked Hill whether or not she could identify him as the perpetrator is not unduly suggestive. *See Commonwealth v. Hale*, 85 A.3d 570, 575 (Pa.Super. 2014) (stating, "[t]he fact that [a]ppellant was handcuffed and police indicated that they wanted her to see if she could identify [a]ppellant are not facts that give rise to an impermissibly suggestive identification." (citations omitted)), *affirmed*, 128 A.3d 781 (Pa. 2015). "Indeed, we have regularly held that a prompt one-on-one identification enhances the reliability of the identification." *Id.* at 574 (citations omitted). Since we find that the out-of-court identification was not unduly suggestive, it is not necessary to determine whether Hill's subsequent in-court identification had an independent basis.

Accordingly, for all the foregoing reasons, we affirm appellant's November 19, 2015 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/18

- 22 -